**Hasson SABREE, by His Mother and Next Friend, Haba SABREE, et al.**

v.

**Feather O. HOUSTON, Official Capacity as Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania**

No. 2:02–CV–03426.

United States District Court, E.D. Pennsylvania.

Jan. 17, 2003.

Ilene W. Shane, Disabilities Law Project, Stephen A. Whinston, Berger & Montague, Philadelphia, PA, for Hassan Sabree, Catherine Meade, Joseph Frazier, Plaintiffs.

Doris M. Leisch, Office of General Counsel, Philadelphia, PA, John A. Kane, Office of General Counsel, Harrisburg, PA, for Feather O. Houston, Defendant.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Currently before the Court are Defendant's Motion to Dismiss (Docket No. 3), Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss (Docket No. 7), and Defendant's Reply Memorandum in Support of Defendant's Motion to Dismiss (Docket No. 9).

## I. BACKGROUND

Pennsylvania participates in Medicaid, a cooperative federal-state medical assistance program, in which participating states receive federal reimbursement for a portion of its expenditures for medical services provided to eligible persons. The purpose of this program is to provide funds to States to enable those States, "as far as practicable under the conditions in such state[s]," to make Medical Assistance available to elderly, indigent and disabled persons. 42 U.S.C. § 1396. Title XIX requires a state to submit a "State Plan," for approval by the Department of Health and Human Services ("HHS"). *Id.;* 42 C.F.R. § 430.10. Under this program a State must pay for certain services, and may elect to pay for additional services. *See* 42 U.S.C. § 1396a(a)(10)(A), (C); 42 C.F.R. §§ 440.210, 440.220. Pennsylvania opted to provide "intermediate care facilities for the mentally retarded" or "ICF/MR" services,[1] which provide health and rehabilitative services for people with mental retardation and developmental disabilities.[2]

The complaint shows that Plaintiffs are seeking to vindicate a right to "small community-based" ICFs/MR. The issue presented in the motion to dismiss is: Does Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396V, confer an enforceable right to small community-based intermediate care facilities for mentally retarded persons ("(ICFs/MR)")? The complaint is replete with allegations of entitlement under Title XIX to small community based

---

**1.** Under Federal law ICF/MR facilities are defined as institutions for mentally retarded persons or persons with related disorders if:

> (1) The primary purpose of such institution (or distinct part thereof) is to provide health or rehabilitative services for mentally retarded individuals and the institution meets such standards as may be prescribes by the Secretary [of HHS];
> (2) The mentally retarded individual with respect to whom a request for payment is made under a plan approved under this subchapter is receiving active treatment under such a program; . . .

42 U.S.C. § 1396d(d)(1), (2).

**2.** A person is eligible for IFC/MR services when he or she: 1) has mental retardation; 2) needs "active treatment," that is he or she will benefit from a program of activities which allow that person to reach full potential, whether it is physically, mentally, socially or vocationally; and 3) his or her physician recommends IFC/MR level of care. *See* Compl. ¶¶ 59–60.

ICF/MR services. *See* Complaint at ¶¶ 2, 21, 32, 40, 64, 66, 70, 71–75.

## II. *LEGAL STANDARD*

### A. *Federal Rule of Civil Procedure 12(b)(6)*

When considering a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6), the Court must accept as true all facts alleged in the complaint and any reasonable inferences that can be drawn therefrom. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990) (citing *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988)); *see also H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The legal standard for notice pleading under the Federal Rules is very lenient, requiring that the complaint be construed liberally in the plaintiff's favor. *See Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir.1989); *Weston v. Pennsylvania*, 251 F.3d 420, 429–30 (3d Cir.2001). A court may only dismiss a complaint where plaintiff can prove no set of facts, consistent with his allegations, which justifies relief.[3] *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Crighton v. Schuylkill County*, 882 F.Supp. 411, 414 (E.D.Pa.1995).

The Federal Rules of Civil Procedure do not impose upon a Plaintiff the burden of filing detailed, factually intense pleadings on which the claim is based. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). At the same time, the court is not required to credit a plaintiff's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *See Id.* The Federal Rules merely require "a short and plain statement of the claim showing that the pleader is entitled

to relief," enough to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Fed.R.Civ.P. 8(a)(2) (West 2001).

The issue before the court on a 12(b)(6) motion is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *John Hancock Mutual Life Insurance Co., v. King*, Civ.A. No. 96–4983, 1997 WL 373512 (D.N.J. March 26, 1997); *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir.1998) (holding that when deciding a 12(b)(6) motion, the court has an obligation "to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable").

## III. *DISCUSSION*

### A. *Title XIX*

This action concerns Title XIX of the Social Security Act ("Title XIX"), 42 U.S.C. § 1396 *et seq.*, which concerns a federal medical assistance program, commonly referred to as Medicaid. *See Elizabeth Blackwell Health Center for Women v. Knoll*, 61 F.3d 170, 172 (3d Cir.1995). Under Title XIX, a state receives federal funding in exchange for setting up and operating a program within the parameters established by Congress. *See Id.*; 42 C.F.R. § 430.0 (1994).

This program is not mandatory upon the States. When a State chooses to participate, however, it must develop its own plan, and have it approved by the Secretary HHS. In order to receive federal funding, a "state's plan must conform, both on its face and as applied, with various federal requirements."

---

**3.** Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint

"for failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

## B. *42 U.S.C. § 1983*

In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court established for the first time that § 1983 is available as a remedy for violations of federal statutes as well as constitutional violations. As a predicate to seeking redress under section 1983, a plaintiff " 'must assert the violation of a federal right,' and not merely a violation of federal law." *Pennsylvania Pharmacists Ass'n v. Houstoun,* 283 F.3d 531, 535 (3d Cir.2002) (quoting *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)). It follows, therefore, that as prerequisite to proceeding under § 1983 for an alleged violation of a federal statute (1) the statute creates "enforceable rights, privileges, or immunities within the meaning of § 1983" and (2) that Congress has not specifically foreclosed plaintiff's ability to use § 1983 as a vehicle for enforcement of the statute within the enactment itself. *Pennsylvania Pharmacists Ass'n,* 283 F.3d at 535 (citing *Wright v. Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)).

## C. *Spending Power Legislation*

The Medicaid Act was enacted by Congress pursuant to its spending power.[4] It is well established that Congress may fix the terms under which federal moneys are dispersed to the States. *See Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). It is similarly well established that:

> In legislation enacted pursuant to the spending power, the typical remedy for State noncompliance with federally imposed conditions is *not a private cause of action* for noncompliance but rather action by the Federal Government to terminate funds to the State. *Id.* at 28, 101 S.Ct. 1531 (emphasis added).

Moreover, the legitimacy of the power to condition the dissemination of federal money is based on a State's voluntary and knowing acceptance of Congress' terms.

Since *Pennhurst,* the Supreme Court has only twice found spending legislation to confer individual rights. *See Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (permitting a § 1983 suit, finding that Congress spoke in terms that "could not be clearer" and bestowing entitlements sufficiently specific and definite to qualify as enforceable rights under *Pennhurst* ); *Wilder v. Virginia Hospital Assn.,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (permitting suit where Congress left no doubt if its intent for private enforcement).

More recent Supreme Court cases, however, have refused to infer individual rights from spending legislation. *See Gonzaga University v. Doe,* 122 S.Ct. at 2274. In the 1992 case, *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), the Supreme Court refused to permit the private enforcement of the Adoption Assistance and Child Welfare Act of 1980 through § 1983. *Id.* at 363, 112 S.Ct. 1360. The Act required States that received federal funding for adoption programs to create a Plan which would require "reasonable efforts" to keep children out of foster homes. *Id.* at 358, 112 S.Ct. 1360. Upon examining the statutory language, the Court concluded that the "term 'reasonable efforts' in this context is at least as plausibly read to impose a rather generalized duty on the State, to be en-

---

**4.** Article I, § 8, cl. 1, of the Constitution contains the spending power, which provides, "Congress shall have Power to ... provide for the ... general Welfare of the United States."

forced not by private individuals, but by the Secretary in the manner [of reducing payments]." *Id.* at 363, 112 S.Ct. 1360.[5]; *see also Gonzaga,* 122 S.Ct. at 2274.

In *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), five mothers sought a § 1983 remedy, alleging that State agencies consistently failed to comply with Title IV–D of the Social Security Act, which required States that receive federal funds to "substantially comply" with the conditions designed to ensure prompt payment of child support. *Id.* at 343, 117 S.Ct. 1353. The court held that the statute did not provide for individual entitlement. *Id.* "The standard is simply a yardstick to measure the *systemwide* performance of a State's Title IV–D program." *Id.* (emphasis in original). As such, the Secretary's function is to assess the "aggregate function of the State," rather than monitoring whether the "needs of any particular person have been satisfied." *Id.*

The *Gonzaga* Court cleared up the confusion among courts interpreting *Blessing* as allowing private enforcement under § 1983 "so long as the plaintiff falls within the general zone of interest that the statute is intended to protect," when it stated:

> We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. Section 1983 provides a remedy only for the deprivation of 'rights, privileges or immunities secured by the Constitution and laws' of the United States. Accordingly, it is *rights,* not the broader or vaguer 'benefits' or 'interest,' that may

be enforced under the authority of that section. *Gonzaga,* 536 U.S. 273, 122 S.Ct. at 2275 (emphasis in original).

▮ Because Section 1983 provides a mechanism for enforcing rights "secured" elsewhere, the Court's initial inquiry is whether the statute to be enforced confers any right at all. *Id.* at 2276. The Court must determine "whether or not Congress intended to confer individual rights upon a class of beneficiaries." *Id.* at 2276.[6] It is important to note that regardless of who *actually* benefits from the statute, the inquiry is whether a statute is *intended* to benefit particular plaintiffs. *Pennsylvania Pharmacists Ass'n,* 283 F.3d at 535. Therefore, the question before the Court is: Did Congress, in enacting the Medicaid Act, unambiguously confer upon the mentally handicapped beneficiaries of the Act, a right to enforce the requirement that the State make available small, community based ICF/MR services and that such services be provided with reasonable promptness? *See Suter v. Artist,* 503 U.S. 347, 357, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992).

## D. Right to Community Based ICF/MR Services

In *Gonzaga* the court juxtaposed the rights-creating language of Titles VI and IX, that "no person ... shall be subjected to discrimination," with the regulatory language of 20 U.S.C. § 1232g(b)(1), addressed to the Secretary of Education, stating that "[n]o funds shall be made available" to any "educational agency or institution" which has a prohibited "policy or practice." *Gonzaga,* 122 S.Ct. at 2277.

---

**5.** *Suter* was brought by a class of parents and children. The court held that because the Act did not confer individually enforceable rights, there was no basis for "private enforcement, even by a class of the statute's principal beneficiaries." *Gonzaga,* 122 S.Ct. at 2274.

**6.** "A court's role discerning whether personal rights exists in the § 1983 context should therefore not differ from its role in discerning whether personal rights exists in the implied right of action context." *Gonzaga,* 122 S.Ct. at 2276.

This juxtaposition highlighted the fact that "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander v. Sandoval,* 532 U.S. 275, 289, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (quoting *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)). The Court reiterated its findings in *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), stating:

> There would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefited class, had written it simply as a ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices. 441 U.S. at 690–693

The Court concluded that because the Family Educational Rights and Privacy Act ("FERPA") lacks the "rights creating" language required to evidence Congressional intent, and "speaks only in terms of institutional policy and procedure, not individual instance of disclosure," FERPA did not bestow enforceable rights. *Gonzaga,* 122 S.Ct. at 2277–78.

### E. *Intent to Confer Rights*

 In the instant case, unlike Title VI of the Civil Right Act of 1964, with its "unmistakable focus on the benefited class,"[7] section 1396 of Title XIX does not have the rights-creating language integral to a showing of Congressional intent to confer rights. Section 1396, the foundation for Title XIX provides:

> For the purpose of enabling each State, as far as practicable under the conditions of each State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for medical assistance. 42 U.S.C. § 1396.

This authorizing provision does not unambiguously confer rights to individuals. First, the statute is phrased in terms of enabling a *State* to effectuate and implement the federal-state medicaid program. Second, the "individuals" referenced are merely beneficiaries, not persons entitled to privately enforce the statute. The final portion of this section speaks in terms of appropriations and payments to the States, not to individuals.

The Supreme Court has stated that where a statute lacks the sort of explicit, rights-creating language found in Title VI, the Court "rarely impute[s] to Congress an intent to create a private right of action." *Gonzaga,* 122 S.Ct. at 2276 n. 3.

In addition to the authorizing provision, § 1396c provides, in part:

> if the Secretary [HHS], after reasonable notice and opportunity for a hearing to

---

**7.** Title VI states: "No person in the United States shall ... be subjected to discrimination under any program or activity receiving federal financial assistance" on the basis of race, color, or national origin. 78 Stat. 252, 42 U.S.C. § 2000(d) (1994 ed.)

the State agency administering or supervising the administration of the State plan approved under this subchapter, finds ...

(2) that in the administration of the plan there is a failure to *comply substantially* with any such provision;

the Secretary shall notify such State agency that further payment will not be made to the State ..., until the Secretary is satisfied that there will no longer be any such failure to comply. 42 U.S.C. 1396c 9 (emphasis added).

Because Title XIX speaks more in terms of what a State must do to make itself eligible for funding versus the individual treatment of recipients, and because the State need only "comply substantially" with statutory provisions to receive funding, the Secretary's function is to assess the "aggregate function of the State," rather than "whether the needs of any particular person have been satisfied." *Blessing*, 520 U.S. at 343, 117 S.Ct. 1353.

▇▇▇ Plaintiff asserts that section 1396 confers individual rights because it requires a state opting to include ICF/MR services in its plan to provide a written plan of care for "each patient." *See* 42 U.S.C. 1396a(a)(31). When read as a whole, however, this section is designed to ensure that patients truly need such services. It is for the benefit of the government, which is funding such programs.[8] *See Elizabeth Blackwell Health Center for Women*, 61 F.3d at 173 (holding that the state must "provide such methods and procedures relating to the utilization of, and the payment for care and services available under the plan ... as may be neces-

sary to safeguard against unnecessary utilization"). *See also* 42 U.S.C. § 1396(a)(30)(A).

The Court's conclusion that § 1396 does not confer enforceable rights is "buttressed by the mechanism Congress chose to provide for enforcing those provisions." *Gonzaga*, 122 S.Ct. at 2278. For individuals "whose claim[s] for medical assistance under the plan is denied or is not acted upon with reasonable promptness," Congress provided for "an opportunity for a fair hearing before the State agency." 42 U.S.C. § 1396a(a)(3). This statutory scheme further reflects the aggregate versus individual focus of § 1396.

### F. *Community Based Services*

▇▇▇ Even assuming *arguendo* that section 1396 did confer privately enforceable rights, Plaintiffs' first claim would, nevertheless, fail a Motion to Dismiss. Plaintiffs' claim of entitlement is to "community services," whether they are habilitative, or residential programs. *See* Compl. ¶¶ 1, 10, 21, 32, 40, 47, 66, 72. Nowhere in the relevant sections of Title XIX does it either expressly or implicitly mention small, community based ICFs/MR. *See* 42 U.S.C. § § 1396(a)15, 1396d(d). While small, community based services would likely benefit the Plaintiffs, section 1396 does not confer the right to those services. Because there is no set of facts on which relief could be granted, Defendant's Motion to Dismiss as to this claim is granted.

### G. *Reasonable Promptness*

▇▇▇ Defendant next asserts that Plaintiffs' reasonable promptness claim should

---

**8.** Section 1396a(a)(31) states, in relevant part: with respect to services in an intermediate care facility for the mentally retarded (where the State plan includes medical assistance for such services) provide, with respect to each patient receiving such ser-

vices ... for a regular program of independent professional review (including medical evaluation) which shall periodically review his *need for such services. Id.* (emphasis added).

be dismissed. Like the ICF/MR service provision, section 1396a(a)(8) does not contain the requisite right-creating language to confer rights. First, Section (a)(8) is similarly a condition on the State seeking federal funds for Medicaid, not an explicit and unambiguous grant of private rights.[9]

Plaintiffs point to various cases which uphold the private enforcement of provisions using "reasonable" language. *See Wilder*, 496 U.S. at 510, 110 S.Ct. 2510; *See Wright*, 479 U.S. at 423–427, 107 S.Ct. 766; *Doe v. Chiles*, 136 F.3d 709 (11th Cir.1998). These cases, however, are distinguishable. In *Wright*, the Supreme Court allowed recovery of past overcharges under a rent ceiling provision of a Public Housing Act under the rationale that said provision "unambiguously conferred 'a mandatory [benefit][,]' and that Congress spoke in terms that could not be clearer." *Gonzaga*, 122 S.Ct. at 2273. In *Wilder*, the Supreme Court held that a statutory provision requiring providers to receive "reasonable and adequate" reimbursement rates was enforceable, holding that Congress left no doubt of its intent to create an enforceable right because the provision required a state to pay " 'objective' monetary entitlement to individual health care providers....' " *Gonzaga*, 122 S.Ct. at 2274. Moreover, both in *Wilder* and *Wright*, guidance was provided both by the accompanying regulatory provisions and the statute itself as to what was "reasonable." *See Wilder*, 496 U.S. at 519 n. 17, 110 S.Ct. 2510; *Wright*, 479 U.S. at 431, 107 S.Ct. 766.

In the instant case, "reasonable promptness" is in no way an explicit conferment of rights. There are varying degrees of mental retardation. Moreover, Title XIX requires that a client may be admitted to an IFC/MR only if the facility is suited to the client's specific needs. *See* Compl. ¶ 57; 42 C.F.R. § 483.440(b)(3). Consequently, the time it takes to match an individual to the proper facility may vary from person to person. Section (a)(8) is not supplemented by any regulation to serve as a guidepost for the Court. The Supreme Court has held that where a statute lacks explicit, rights-creating language, the Court "rarely impute[s] to Congress an intent to create a private right of action." *Gonzaga*, 122 S.Ct. at 2276 n. 3. For these reasons, this Court finds that section (a)(8) does not confer privately enforceable rights. Accordingly, Defendant's Motion to Dismiss the second claim is granted.

An appropriate Order follows.

### *ORDER*

AND NOW, this 16th day of January, 2003, upon consideration of Defendant's Motion to Dismiss (Docket No. 3), Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss (Docket No. 7), Defendant's Reply Memorandum in Support of Defendant's Motion to Dismiss (Docket No. 9), IT IS HEREBY ORDERED that Defendant's Motion is **GRANTED.**

---

**9.** Plaintiffs point to various cases which have held the "reasonably prompt" provision enforceable. *See Kirk v. Houstoun*, CIV.A. No. 99–3253, 1999 WL 820201 (E.D.Pa. Sept. 28, 1999); *Doe v. Chiles*, 136 F.3d 709 (11th Cir.1998); *Rolland v. Cellucci*, 1999 WL 395401 (D.Mass.1999). All of these cases, however, are pre-*Gonzaga*, and therefore utilize the more liberal three-prong test disavowed by *Gonzaga*.