**Jeannette MENDEZ, Judy Cook, and Carmen Ortiz, on behalf of themselves and all others similarly situated, Plaintiffs**

**v.**

**Douglas S. BROWN, in his official capacity as Acting Commissioner of the Massachusetts Division of Medical Assistance, Defendant**

**No. CIV.A. 03–30160–KPN.**

United States District Court, D. Massachusetts.

March 26, 2004.

J. Paterson Rae, Elizabeth A. Silver, Springfield, MA, for Plaintiffs.

Timothy M. Jones, Mass. Attorney General's Office, Springfield, MA, for Defendant.

*MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S MOTION TO DISMISS (Document No. 10)*

NEIMAN, United States Magistrate Judge.

In this action, Jeannette Mendez, Judy Cook and Carmen Ortiz ("Plaintiffs")—all of whom are clinically obese women receiving Medicaid benefits—allege that the Massachusetts Division of Medical Assistance ("DMA")'s policy and practice of denying breast reduction surgery for them and other obese women violates the Medicaid Act, Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("Rehab Act"). The DMA's Acting Commissioner ("Defendant") has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6) and the parties have consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73(b). For the reasons indicated below, the court will deny Defendant's motion.

## I. BACKGROUND

According to the Second Amended Complaint,[1] Plaintiffs are clinically obese women with hypermastia (severe breast enlargement) who are currently receiving Medicaid benefits through DMA. Although the complaint purports to apply to Plaintiffs and "all others similarly situated," no motion to certify the class has yet been filed. Therefore, the only existing plaintiffs are Mendez, Cook and Ortiz.

DMA has denied Medicaid coverage for reduction mammoplasty (breast reduction surgery) for each woman, despite the fact that such surgery has been recommended by their physicians. In each case, DMA has stated that it would reconsider its decision only after the particular individual lost a significant amount of weight. The weight loss requirement is grounded in Defendant's opinion that less costly options are available and that the requested services do not meet professionally recognized standards of health care.

Plaintiffs commenced this two-count action on June 16, 2003. Count I, relying on 42 U.S.C. § 1983 ("section 1983"), alleges that the DMA violated three provisions of the Medicaid Act, 42 U.S.C. § 1396a(a)(8) (which mandates that states provide Medicaid services "with reasonable promptness to all eligible individuals"), § 1396a(a)(10) (which requires states to ensure Medicaid services to certain categories of "individuals" be sufficient in "amount, duration, or scope" when compared with others similarly situated), and § 1396a(a)(17) (which requires state Medicaid plans to include "reasonable standards ... for determining eligibility"), and regulations implemented thereunder. Count II alleges disability discrimination in violation of Title II of the ADA, specifically 42 U.S.C. §§ 12131 and 12132, as well as section 504 of the Rehab Act, 29 U.S.C. § 794.

## II. STANDARDS OF REVIEW

To the extent Defendant's motion is grounded in Rule 12(b)(6), the court has considered the salient facts alleged in the complaint and the reasonable inferences drawn therefrom in a light most favorable to Plaintiffs. *See Coyne v. City of Somerville,* 972 F.2d 440, 443 (1st Cir.1992). As

---

1. Technically, Defendant's motion to dismiss targets the First Amended Complaint, but the parties agreed at oral argument that the motion applies equally to the Second Amended Complaint which, hereinafter, will be referred to as the "complaint."

necessary, the court has also considered "documents the authenticity of which are not disputed by the parties[,] . . . official public records[,] . . . documents central to [P]laintiff[ ]s['] claim . . . [and] documents sufficiently referred to in the complaint." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001) (indicating that such documents may be considered on Rule 12(b)(6) motion without converting it into motion for summary judgment). As the parties are well aware, the complaint may be dismissed pursuant to Rule 12(b)(6) if Plaintiffs cannot prove, beyond a doubt, that facts supporting their claims entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987).

The court notes, however, that Defendant's two threshold arguments with respect to Count I—further described below—question the court's jurisdiction and, as such, properly arise under Rule 12(b)(1). Pursuant to that rule, therefore, the court has considered the above materials (undisputedly authentic documents, public records, etc.) in determining whether Plaintiffs have borne their burden of establishing subject matter jurisdiction. *See Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir.2002). If they have not done so, the complaint may be dismissed. *See Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995).

### III. *Discussion*

In the first of two threshold arguments as to why the court lacks jurisdiction over Count I, Plaintiffs' Medicaid claim, Defendant asserts that Plaintiffs have no private right of action, even via section 1983, to enforce the Medicaid provisions they reference. Second, Defendant asserts that DMA is entitled to sovereign immunity.[2] Beyond these threshold arguments, Defendant argues that Count II, Plaintiff's ADA and Rehab Act cause of action, fails to state a claim upon which relief may be granted.

The court will consider these arguments in turn. In the end, the court will conclude that none of Defendant's arguments provides a sufficient basis for allowing the motion to dismiss.

### A. COUNT I: PRIVATE RIGHT OF ACTION

The parties appear to agree that the Medicaid statute itself contains no provision authorizing Plaintiffs to bring Count I. As a result, the first jurisdictional question raised by Defendant's motion is whether section 1983 provides Plaintiffs with a cause of action to pursue Defendant's alleged violations of certain portions of the Medicaid statute, 42 U.S.C. §§ 1396a(a)(8), (10) and (17). In the court's view, it does.

■ "In order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (emphasis in original). According to the First Circuit Court of Appeals, relative to a recent Medicaid case originating in this court, "[t]he determination of whether a federal statute creates a private right . . . turns on Congress's intent." *Rolland v. Romney*, 318 F.3d 42, 51 (1st Cir.2003) (citing *Alexander*

---

**2.** Defendant had also argued that Count I should be dismissed because Plaintiffs failed to exhaust their administrative remedies and that Mendez's claim, in particular, was barred by the doctrine of issue preclusion. As Plaintiff points out, however, Defendant withdrew these contentions at oral argument. (Plaintiffs' Sur-reply to Defendant's Motion to Dismiss at 8. See also Defendant's Reply to Plaintiffs' Opposition to Motion to Dismiss ("Defendant's Reply") at 10 n. 3.)

v. Sandoval, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), and *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 3, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). "Traditionally," the First Circuit observed, "three indicators" described by the Supreme Court in *Blessing* help determine whether a particular statutory provision gives rise to an enforceable federal right: (1) whether Congress intended that the provision in question benefit the plaintiff; (2) whether the right assertedly protected by the statute is so vague and amorphous that its enforcement would strain judicial competence; and (3) whether the statute unambiguously imposes a binding obligation on the states. *Id.* at 52 (citing *Blessing*, 520 U.S. at 340–41, 117 S.Ct. 1353). At bottom, the purpose of a court's inquiry "is to determine whether or not [the] statute 'confer[s] rights on a particular class of persons.'" *Id.* at 51 n. 8 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 274, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002)).

■ A host of courts—including both the First Circuit and this court—have applied the three *Blessing* indicators to find a section 1983 right of action to enforce the "reasonable promptness" section, 42 U.S.C. § 1396a(a)(8), the first Medicaid provision at issue in Count I. *See Bryson v. Shumway*, 308 F.3d 79, 88–89 (1st Cir. 2002); *Rolland v. Cellucci*, 52 F.Supp.2d 231, 238–40 (D.Mass.1999). *See also Westside Mothers v. Haveman*, 289 F.3d 852, 862–63 (6th Cir.2002); *Doe v. Chiles*, 136 F.3d 709, 715–19 (11th Cir.1998); *Rabin v. Wilson–Coker*, 266 F.Supp.2d 332, 341–42 (D.Conn.2003); *White v. Martin*, No. 02–4154–CV–C–NKL (W.D.Mo. Oct. 3, 2002) (cited in *Rabin* ); *Antrican v. Buell*, 158 F.Supp.2d 663, 670–71 (E.D.N.C.2001), *aff'd on other grounds*, 290 F.3d 178 (4th Cir.2002). As the First Circuit stated in *Bryson:*

First, the statute, on its face, does intend to benefit [eligible Medicaid recipients].... Second, the right conferred is not vague or amorphous.... Finally, § 1396a(a)(8) does unambiguously bind the states. The subsection mandates that state plans "must" provide that medical assistance be provided with reasonable promptness. These are not mere guidelines, but rather requirements which states must meet under the Medicaid system.

*Bryson*, 308 F.3d at 88–89.

In addition, a number of courts, applying *Blessing*, have held that a section 1983 right of action exists to enforce the second Medicaid provision at issue here, section 1396a(a)(10). *See, e.g., Westside Mothers*, 289 F.3d at 862–63; *Antrican*, 158 F.Supp.2d at 671–72, *aff'd on other grounds*, 290 F.3d 178 (4th Cir.2002); *Rolland*, 52 F.Supp.2d at 238–40; *Cherry v. Tompkins*, 1995 WL 502403, at *10–11 (S.D.Ohio Mar. 31, 1995). As indicated, section (a)(10), often referred to as the "comparability" provision, requires states to ensure that Medicaid services to certain categories of "individuals" be sufficient in "amount, duration, or scope" when compared with others similarly situated. The Sixth Circuit explained: "[T]he provisions set a binding obligation on [the states]" and "are not so vague and amorphous as to defeat judicial enforcement, as the state and regulations carefully detail the specific services to be provided." *Westside Mothers*, 289 F.3d at 863.

A similar result has been reached by still other courts with respect to the third Medicaid provision, section 1396a(a)(17). *See, e.g., Smith v. Palmer*, 24 F.Supp.2d 955, 963–66 (N.D.Iowa 1998); *Cherry*, 1995 WL 502403, at *10–11. *See also Preterm, Inc. v. Dukakis*, 591 F.2d 121, 126 (1st Cir.1979) (applying section 1396a(a)(17) to question of whether Massachusetts could

restrict abortion coverage). Again, in applicable part, section (a)(17) requires state Medicaid plans to include "reasonable standards ... for determining eligibility." In essence, therefore, there exists a persuasive line of authority evidencing Congress' intent that all three of the Medicaid provisions upon which Plaintiffs rely here create private rights for which they may seek redress under section 1983.

Defendant's initial memorandum in support of his motion to dismiss mentioned none of this authority. Instead he stated simply that "[P]laintiffs lack an enforceable right because their claims fail to satisfy the second and third requirements in *Blessing*." (Defendant's Memorandum in Support of Motion to Dismiss at 10.) This lack of detailed analysis might be reason enough to reject Defendant's position. *See Parker v. Town of Swansea*, 270 F.Supp.2d 92, 97 n. 2 (D.Mass.2003) (citing *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir.2002), for the proposition that "arguments not briefed are waived"). Nonetheless, the court is compelled to address, and ultimately reject, a slightly more fleshed-out argument that Defendant raises for the first time in his reply memorandum, namely, that the Supreme Court's fairly recent decision in *Gonzaga* "eviscerated" *Blessing*'s three-part test.

The only case Defendant cites in support of this argument is *Sabree v. Houston*, 245 F.Supp.2d 653 (E.D.Pa.2003). *Sabree* opines, in an unsupported footnote, that certain pre-*Gonzaga* cases, including this court's 1999 decision in *Rolland*, utilized "the more liberal three-prong test *disavowed* by *Gonzaga*." *Id.* at 661 n. 9 (emphasis added). This reference, Defendant asserts, confirms that *Gonzaga* represents "a sea-change in the law concerning private rights of action under § 1983 and ... casts considerable doubt on authority that applied the *Blessing* test." (Defendant's Reply at 8.)

The court finds Defendant's reading of, and reliance on, *Sabree* somewhat misplaced. For one thing, *Sabree*'s gloss—that *Gonzaga* "disavowed" *Blessing*—has been rejected by at least one other district court which, instead, preferred to follow *Blessing* and the First Circuit's decision in *Bryson* that section 1396a(a)(8) "provides the basis for an action under § 1983." *Rabin*, 266 F.Supp.2d at 342. Moreover, as Plaintiffs note, *Sabree*'s "disavow[al]" language is untenable in light of *Gonzaga*'s own approving citations to the *Blessing* indicators. *See, e.g., Gonzaga*, 536 U.S. at 282–83, 122 S.Ct. 2268. Finally, several courts of appeal—including the First Circuit in both *Bryson* and *Rolland*—have continued to cite *Blessing*, with approval, in post-*Gonzaga* contexts. *See Rolland*, 318 F.3d at 51–52 n. 8 (acknowledging *Gonzaga* and then applying the *Blessing* indicators); *Bryson*, 308 F.3d at 88 (noting the value of *Blessing* indicators as "a guide" but that, under *Gonzaga*, the ultimate issue concerns Congress' intent). *See also Abrams v. City of Rancho Palos Verdes*, 354 F.3d 1094, 1096 (9th Cir.2004), *Schwier v. Cox*, 340 F.3d 1284, 1290 (11th Cir.2003), *and Frison v. Zebro*, 339 F.3d 994, 998 (8th Cir.2003) (all citing *Blessing* favorably in post-*Gonzaga* contexts).

Still, Defendant's position has some resonance. In a recent Medicaid case, for example, the First Circuit itself made clear that *Gonzaga* represented at least a "shift in emphasis"—if not "a tidal shift"—in the area of private rights of action. *Long Term Care Pharmacy Alliance v. Ferguson*, 362 F.3d 50, 58–59 (1st Cir.2004). As the First Circuit explained, *Gonzaga* did more than simply repeat the *Blessing* indicators, it "indicated that nothing short of 'an unambiguously conferred right' could support a claim under section 1983 based on a federal funding law." *Id.*, at 57 (emphasis added; citations omitted). Two "touchstones" in this analysis, the court

continued, are whether the particular statute (1) contains "rights creating language" and (2) identifies a "discrete class of beneficiaries." *Id.*, at 57 (citing *Gonzaga*, 536 U.S. at 287–88, 122 S.Ct. 2268). The court went on to find that the section of the Medicaid statute there at issue, 42 U.S.C. § 1396a(a)(30)(A)—which, *inter alia*, requires that the rates charged by certain Medicaid service *providers* be "sufficient to enlist enough providers to provide services similar to those generally available in the area"—failed both parts of this analysis. *Id.*

Unfortunately for Defendant, the three Medicaid provisions at issue here—unlike section 1396a(a)(30)(A)—readily survive any heightened analysis which *Gonzaga* requires. For one thing, sections 1396a(a)(8), (10) and (17) all contain "rights creating" language. To repeat, subsection (8) establishes the right to have Medicaid services be provided "with reasonable promptness," subsection (10) creates the right to "sufficient services," and subsection (17) provides for "reasonable standards ... for determining eligibility." In addition, and perhaps more importantly, each subsection—again unlike subsection (30)(A)—identifies a "discrete class of beneficiaries": "all eligible individuals" (subsection (8)); specific "individuals" receiving aid, assistance or benefits in comparison to others similarly situated (subsection (10)); and those individuals seeking Medicaid "eligibility" (subsection (17)). Thus, whether the particular Medicaid subsection at issue is analyzed strictly under *Blessing* or through the filter of *Gonzaga*, each one satisfies this circuit's test for providing a private right of action via section 1983.

To sum up, Plaintiffs' position that a private right of action exists appears well grounded in case law and the Medicaid statute itself and Defendant has submitted no persuasive authority to the contrary. Accordingly, the court concludes that section 1983 provides Plaintiffs with a cause of action to pursue all three of the statutory claims they allege in Count I.

**B.  COUNT I: SOVEREIGN IMMUNITY**

As a final jurisdictional argument, Defendant contends that he is barred by the doctrine of sovereign immunity from being sued for the claims raised in Count I. He concedes, however, that his sovereign immunity argument is "identical" to one the First Circuit rejected in *Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 238 (1st Cir.2002). The court being so bound, it will not dismiss Count I on the basis of sovereign immunity. Accordingly, Plaintiffs have borne their burden of establishing subject matter jurisdiction.

**C.  COUNT II**

■ Count II alleges disability discrimination in violation of both Title II of the ADA and the Rehab Act.[3] To make out a Title II ADA claim, a plaintiff must establish, *inter alia*, "that [s]he is a qualified individual with a disability." *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir.2000) (citing 42 U.S.C. § 12132). A "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;  (B) a record of such an impairment;  or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

■ In the case at bar, Defendant argues that Plaintiffs do not have a "disability" since their obesity is neither an

---

**3.**  Since " '[d]isability' is defined identically under the ADA and the Rehabilitation Act," *Tardie v. Rehabilitation Hosp. of Rhode Island,*

168 F.3d 538, 542 (1st Cir.1999), the court will hereinafter refer only to the ADA standards.

"impairment" nor one that "substantially limits one or more [of their] major life activities." In the court's estimation, however, it is unnecessary to presently resolve such issues since Count II amply satisfies the rules' relatively liberal pleading requirements. *See* Fed.R.Civ.P. 8(a) and (e). As the Supreme Court stated nearly one-half century ago:

> [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and grounds upon which it rests.

*Conley,* 355 U.S. at 47, 78 S.Ct. 99 (quoting Fed.R.Civ.P. 8(a)). *Accord Leatherman v. Tarrant County Narcotics Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). *See also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding that complaints in employment discrimination cases, "as in most others, must satisfy only the simple requirements of Rule 8(a)") (footnote omitted).

In the court's view, Plaintiffs have given Defendant "fair notice" of their ADA claim and the "grounds upon which it rests." The complaint alleges that Plaintiffs—at 4′11″ and 226 pounds (Mendez), 5′6″ and 203 pounds (Cook) and 5′2″ and 211.4 pounds (Ortiz)—are "morbidly obese" and, accordingly, "are disabled persons or perceived to be disabled within the meaning of the Rehabilitation Act and the Americans with Disabilities Act." (Complaint at 1 and ¶ 53.) "As a result," the complaint continues, "Defendant's policy or practice of denying medically necessary breast reduction surgery to them because of their obesity constitutes discrimination on the basis of disability." (*Id.* ¶ 53.)

To be sure, Defendant desires a ruling that obesity does not constitute a "disabili-

ty" as a matter of law. *Cf.* 29 C.F.R. part 1630, App. § 1630.2(j) (2004) ("[E]xcept in rare circumstances, obesity is not considered a disabling impairment."). However, even Defendant conceyes that the First Circuit has allowed obese persons to pursue disability discrimination claims. In *Cook v. Dep't of Mental Retardation,* 10 F.3d 17 (1st Cir.1993), for example, the court upheld a jury's verdict that discrimination because of morbid obesity violated the Rehab Act. As may well be the case here, the court found that the plaintiff's condition was either a "physical ... impairment that substantially limit[ed] one or more of the major life activities" or, at least, that the defendant "regarded" the plaintiff as suffering from such an impairment:

> On one hand, the jury could plausibly have found that plaintiff had a physical impairment; after all, she admittedly suffered from morbid obesity, and she presented expert testimony that morbid obesity is a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory, and cardiovascular systems. On the second hand, the jury could have found that plaintiff, although not handicapped, was treated by [the defendant] as if she had a physical impairment.

*Id.* at 23. *See Francis v. City of Meriden,* 129 F.3d 281, 286 (2nd Cir.1997) (observing that obesity may constitute a "physical impairment" where it "relates to a physiological disorder"); *Connor v. McDonald's Restaurant,* 2003 WL 1343259, at *3 (D.Conn. Mar. 19, 2003) (concluding that an allegation of morbid obesity was sufficient to satisfy the liberal pleading standard of Rule 8(a) for a disability discrimination claim). *See also Fredregill v. Nationwide Agribusiness Ins. Co.,* 992

F.Supp. 1082, 1088–89 (S.D.Iowa 1997) (collecting cases on obesity as a disability).

Of course, as Plaintiffs acknowledge, even if their obesity constitutes a "physical impairment" under the ADA, they will have to prove that it "substantially limits" at least one major life activity. *See* 42 U.S.C. § 12102(2)(A). This may prove difficult. *See* 28 C.F.R. § 35.104(1)(iii)(2) (2004) (in "disability" definition, "[t]he phrase major life activities means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working"). For the moment, however, the court cannot say, beyond a doubt, that Plaintiffs will be unable to supply facts supporting this element or for that matter, the rest of their claim for relief. *See Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *Roeder*, 814 F.2d at 25. Accordingly, Defendant's motion to dismiss Count II will be denied.

## IV. CONCLUSION

For the reasons stated, Defendant's motion to dismiss is DENIED. Counsel for the parties are hereby ordered to appear for an initial scheduling conference in accord with the notice to be issued by the clerk's office.

IT IS SO ORDERED.