**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 1, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

STEFFAN HOBBS, by and through
his parents and next friends, JIMMY
and JANET HOBBS,

        Plaintiff–Appellant,

v.

MARSHA ZENDERMAN; JOEY
KELLENAERS; and PAMELA HYDE,
Secretary of the Department of Human
Services, in their individual and
official capacities,

        Defendants–Appellees.
_____

THE SPECIAL NEEDS ALLIANCE;
NEW MEXICO CHAPTER OF THE
NATIONAL ACADEMY OF ELDER
LAWYERS; NEW MEXICO TRIAL
LAWYERS ASSOCIATION; STATES
OF COLORADO, ALASKA,
DELAWARE, FLORIDA, HAWAII,
IDAHO, NEBRASKA, NEVADA,
NEW HAMPSHIRE, NEW JERSEY,
OKLAHOMA, SOUTH CAROLINA
VERMONT, WEST VIRGINIA, and
WYOMING,

        Amici Curiae.

No. 08-2099

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 6:06-CV-00985-BB-WDS)**

Duff Westbrook (Maureen A. Sanders with him on the briefs), Sanders & Westbrook, P.C., Albuquerque, New Mexico, for Plaintiff-Appellant.

Paul R. Ritzma, General Counsel/Special Assistant Attorney General (Mark Dawson Jarmie and Mark Standridge, Mark D. Jarmie LLC, with him on the briefs), New Mexico Human Services Department, Santa Fe, New Mexico, for Defendants-Appellees.

Before **HENRY**, Chief Circuit Judge, **BRISCOE**, and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

Steffan Hobbs, by and through his parents as next friends, sued several employees of the New Mexico Human Services Department ("NMHSD") following that agency's denial of Hobbs' application for Medicaid benefits. NMHSD's denial turned on its determination that a certain trust was a "countable resource" because the trust was not being administered for Hobbs' sole benefit. Hobbs advanced claims under 42 U.S.C. § 1983 alleging defendants violated his rights under the Medicaid Act and denied him due process by rejecting his application on the basis of unwritten, unascertainable standards. The district court agreed with defendants' interpretation of the relevant statutes, concluded

that Hobbs' rights had not been violated, and granted summary judgment to defendants.

We hold that the statutory provisions upon which Hobbs relies do not confer private rights enforceable under § 1983. We further hold that defendants did not violate Hobbs' right to due process, but simply applied a "sole benefit" standard to the particular facts of his case. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.

**I**

Hobbs was severely injured in an auto accident in 2000 when he was six years old. He suffered traumatic brain injury that required him to undergo two partial lobectomies. As a result of his injuries, Hobbs is prone to seizures and requires significant assistance in daily activities such as eating and bathing. For purposes of the Medicaid Act, Hobbs is disabled. See 42 U.S.C. § 1382c(a)(1).

In 2003, Hobbs and his parents entered into a $2.5 million settlement agreement for injuries related to the accident. Under the terms of that agreement, $1.1 million was set aside for a special needs trust to benefit Hobbs. A state court approved the creation of "The Steffan Hobbs Medicaid Payback Trust" (the "Trust") on May 29, 2003. MassMutual Trust Co., F.S.B., serves as trustee, and Hobbs is listed as the sole beneficiary. Although the Trust purports to be irrevocable, the trust agreement permits "the Trustee and the Guardian . . . to revoke this Trust or amend the terms hereof."

The trust agreement specifies that it was established pursuant to "42 U.S.C. [§] 1396p(d)(4)(A)" and that its assets "should not be deemed to be available to [Hobbs] for purposes of Supplemental Security Income (SSI) or Medicaid eligibility." Upon Hobbs' death, any funds remaining in the Trust will be paid to state Medicaid agencies, up to the amount Hobbs received from those agencies. During Hobbs' lifetime, Trust funds may be distributed "for the benefit of" Hobbs. However, "such distributions shall be limited to expenditures which shall not cause ineligibility for [Medicaid] benefits" if receiving Medicaid or other need-based benefits is in Hobbs' best interests as determined in the sole discretion of the trustee. The trust agreement further provides:

> Expenditures may be made directly to any of [Hobbs'] family members, or any other person who takes [Hobbs] into his or her home or provides special care or attention to him, to compensate such person for the reasonable value of services provided and to reimburse such person for costs associated with shelter, care, or attention.

From the Trust corpus, $750,000 was used to purchase an annuity, which provides the Trust with gradually increasing monthly payments. As of November 2006, the annuity provided monthly income of $2,479.40 to the Trust. The primary outlay from the Trust is payment to Mrs. Hobbs for "extraordinary care provided to Steffan Hobbs." Mrs. Hobbs helps her son with dressing and bathing, and she monitors him for seizures. She also transports him to and from school and has helped train school personnel to deal with Hobbs' injury. Mrs. Hobbs

- 4 -

receives a bi-weekly payment from the Trust that, as of November 2006, equaled $1,322.10 per installment. Trust funds have also been used to purchase a 50% interest in the Hobbs' land and home, home furnishings, homeowner's insurance, home maintenance and improvement, and life insurance on Hobbs' parents.

In 2003, Hobbs applied to Medicaid's Medically Fragile Waiver Program (the "Program"). That Program provides home care services to Medicaid recipients with serious medical needs. At the time he applied, Hobbs was receiving Supplemental Security Income ("SSI") and SSI Medicaid. New Mexico Department of Health determined that Hobbs was medically eligible for the Program and reserved a slot for him pending determination of his financial eligibility. Joey Kellenaers, a Management Analyst at NMHSD, was responsible for determining whether Hobbs' Trust constituted a "countable resource" for Medicaid eligibility purposes. Consistent with NMHSD practice, Kellenaers referred the Trust to NMHSD Office of General Counsel, where Assistant General Counsel Marsha Zenderman reviewed it.

To be eligible for the Program, an applicant must possess no more than $2,000 in "countable resources." Certain trust assets, including those in a "special needs trust," are not considered countable resources. § 1396p(d)(4). A "special needs trust" is statutorily defined as:

> A trust containing the assets of an individual under age 65 who is disabled . . . and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual,

or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.

§ 1396p(d)(4)(A).

Following Zenderman's review of the Trust and related documents, she determined that the Trust was a countable resource. On April 15, 2004, Zenderman wrote to Hobbs' personal injury attorney, stating that the use of Trust funds "has effectively disqualified your client from being eligible for Medicaid." In particular, Zenderman noted that

> under state Medicaid policies, special needs trust funds may not be used, for example, to purchase land and a family home, pay property taxes and insurance on that home, pay for home furnishings (unless related to the beneficiary's disabilities), purchase farm animals and outbuildings, compensate a parent for taking care of her disabled child, pay the beneficiary's personal income taxes, or pay advisory fees to the trustee's affiliates.

Although Hobbs was not then eligible for the Program, Zenderman advised Hobbs' lawyer to "take whatever legal steps are necessary to remedy these problems" and provided a sample trust to assist Hobbs in "amending the trust so that it [would] meet state Medicaid requirements."

After receiving this letter, Hobbs' new attorney contacted Zenderman, and the two corresponded throughout the summer of 2004. On July 29, 2004, Zenderman sent a ten-page letter to Hobbs' counsel detailing her concerns with the Trust. Zenderman's letter discussed specific provisions of the New Mexico

Administrative Code, the State Medicaid Manual, and the Social Security Administration's Program Operations Manual System ("POMS"), considered several cases to which Hobbs' counsel had referred Zenderman, and identified a number of problems with the Trust as written. Zenderman relied on sections of the State Medicaid Manual that require a special needs trust be "for the sole benefit" of a disabled individual, along with provisions defining that phrase. She also cited to a section of the POMS that differentiates between compensation paid to third-party care providers and that paid to family members.

Following further correspondence, Hobbs' counsel requested that NMHSD issue a decision on Hobbs' application so that Hobbs could obtain a "fair hearing" on the benefits denial. Zenderman then conveyed this request to NMHSD officials. On October 20, 2004, NMHSD notified Hobbs that his application for the Program had been denied because "[t]he value of your resources exceeds the program resource limit of $2,000," citing New Mexico Administrative Code § 8.290.500.11.

A hearing to review NMHSD's determination began on April 27 and continued on June 10, 2005. Hobbs was represented by counsel throughout the hearing and was permitted to submit evidence. At the hearing, NMHSD bore the burden of proof to support its decision by a preponderance of the evidence. After considering the evidence, the administrative law judge ("ALJ") recommended that the NMHSD decision to deny benefits be affirmed, concluding that the Trust

payments to Mrs. Hobbs for "providing routine ongoing care" were not "for the sole benefit" of Hobbs. The ALJ expressly declined to rule on whether payments to a family member for "performing the functions of a physical or other therapist, or perform[ing] skilled services" would render the Trust a countable resource. Instead, the ALJ's holding was limited to payments for care that Mrs. Hobbs was already legally obligated to provide as a parent. The NMHSD Medical Assistance Division adopted the ALJ's recommendation on December 2, 2005. Hobbs then appealed this administrative determination in state court.

In October 2006, the Social Security Administration informed Hobbs that his SSI payments would cease in October because he exceeded the resource limit of $2,000. Because Hobbs was no longer eligible for SSI, so too was he ineligible for the SSI Medicaid benefits he had been collecting.

Hobbs, through his parents as next friends, filed the present suit in the U.S. District Court for the District of New Mexico on October 12, 2006. Hobbs successfully moved to stay his state court administrative appeal pending the outcome of this federal suit. In his complaint, Hobbs asserted claims against Zenderman, Kellenaers, and NMHSD Secretary Pamela Hyde in both their individual and official capacities. Proceeding under § 1983, Hobbs alleged that defendants denied him procedural due process, substantive due process, and equal protection, and violated his rights under the Medicaid statutes. With respect to these claims, Hobbs sought: (1) monetary damages, both compensatory and

punitive; (2) an injunction prohibiting the defendants from treating the Trust as a countable resource or requiring amendments to the Trust; and (3) declaratory relief holding that the Trust complies with § 1396p(d)(4), that Hobbs is entitled to use Trust funds for the purposes challenged by NMHSD, and that Hobbs was categorically eligible for Medicaid due to his status as an SSI recipient. Hobbs also brought a § 1983 claim against Zenderman for chilling his First Amendment right to petition for a redress of grievances, seeking compensatory and punitive damages.[1]

Both parties moved for summary judgment. In an order granting summary judgment to defendants, the district court concluded that NMHSD may review the manner in which a special needs trust is administered to determine Medicaid eligibility and that Hobbs had been afforded due process. With respect to Hobbs' argument that he was categorically eligible for Medicaid based on his SSI benefits, the court ruled that Hobbs presented no admissible evidence that the Social Security Administration considered his Trust a non-countable resource. Finally, the district court held that the defendants were entitled to qualified immunity regardless of the merits determination because there was no clearly established law on point. After the district court dismissed each of his claims, Hobbs timely appealed.

---

[1] Although the district court dismissed the First Amendment claim, Hobbs does not appeal that dismissal. Accordingly, we do not consider it.

## II

### A

Before proceeding to the merits, we note that this appeal does not present the primary issue the district court decided. As the district court put it, the "key question in this case is whether a state has authority to assess the administration of a special-needs trust in determining Medicaid eligibility of the trust beneficiary." Hobbs argued that under the plain text of 42 U.S.C. § 1396p(d)(4)(A), NMHSD could review whether the Trust had been initially <u>established</u> for Hobbs' benefit, but could not consider how the Trust was later <u>administered</u>. In granting summary judgment to the defendants, the district court rejected this argument, concluding that the statute was ambiguous and that Congress intended States to review the administration of special needs trusts.

On appeal, Hobbs challenged that ruling in his opening brief, arguing that the "district court's conclusion that the word 'established' as used in 42 U.S.C. § 1396p(d)(4)(A) meant 'administered' was in error." (Appellant's Br. at 36.) The response briefs from the defendants and from several States, as amici, focused on this question of statutory interpretation. In his reply brief, however, Hobbs affirmatively concedes the matter, stating:

> The issue is not whether States have the authority to evaluate and assess the administration of a special needs trust, or to place restrictions on what Special Needs funds may be used for, in determining Medicaid eligibility. In fact, Plaintiff does not contest the States' authority to do so in this appeal. Rather, the issue

presented here involves <u>how</u> the State must carry out its eligibility determinations, and whether it can exercise such authority in the absence of written policies and ascertainable standards in determining Plaintiff's Medicaid eligibility.

(Appellant's Reply Br. at 2-3.)  Given this concession, we are in the somewhat unusual position of assuming without deciding that the statute at issue permits States to "evaluate and assess the administration of a special needs trust, [and] to place restrictions on what Special Needs funds may be used for, in determining Medicaid eligibility."  (<u>Id.</u>)

We further note that this case is not an appeal of NMHSD's denial of benefits to Hobbs.  NMHSD is not a party to this case.  Rather, pursuant to New Mexico Statutes §§ 27-3-4 and 39-3-1.1, Hobbs has a direct appeal of the NMHSD decision currently pending in New Mexico state court.  Hobbs is free to contest the manner in which NMHSD applied § 1396p(d)(4)(A)'s "for the benefit of" standard to his Trust—including its treatment of payments to a minor's parents—in that case.

Rather than challenging States' authority to monitor the administration of special needs trusts or appealing the NMHSD's denial, Hobbs raises several other contentions before us.  First, he alleges that his special needs trust met the requirements of § 1396p(d)(4)(A), excluding it from consideration for Medicaid eligibility.  Next, he asserts that the state violated § 1396a(a)(10) because it imposed a standard more restrictive than that applicable to SSI eligibility to

- 11 -

determine whether the Trust was a countable resource for Medicaid purposes. Lastly, Hobbs argues that NMHSD violated his substantive and procedural due process rights by rendering standardless, ad hoc determinations regarding his Medicaid eligibility.

**B**

We review a grant of summary judgment de novo, applying the same standard as the district court. Weigel v. Broad, 544 F.3d 1143, 1150 (10th Cir. 2008). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, "[w]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Weigel, 544 F.3d at 1151 (quotation omitted).

**III**

We consider first whether the statutory provisions at issue provide Hobbs a right of action cognizable under 42 U.S.C. § 1983.[2] Hobbs seeks enforcement of three provisions of the Social Security Act: §§ 1396p(d)(4)(A),

_____

[2] Although the existence of private rights of action was raised below, the district court declined to address it. Yet, we may affirm on any ground adequately supported by the record provided that the parties have had a fair opportunity to address it. See Thomas v. City of Blanchard, 548 F.3d 1317, 1327 n.2 (10th Cir. 2008). Both parties have briefed the private right of action issue on appeal, and the record is adequately developed to allow us to decide it.

1396a(a)(10)(C)(i), and 1396a(a)(17).

It is well established that some statutory rights may be enforced via § 1983. Gonzaga Univ. v. Doe, 536 U.S. 273, 279 (2002) (collecting cases). As in the implied right of action context, the primary question in determining whether a statute will support a claim under § 1983 is whether "Congress intended to confer individual rights upon a class of beneficiaries." Id. at 285. We examine three factors in making this determination:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

Blessing v. Freestone, 520 U.S. 329, 340-41 (1997) (quotation omitted). A statute embodies congressional intent to benefit the plaintiff only if it is "phrased in terms of the persons benefited." Gonzaga Univ., 536 U.S. at 284.

**A**

Regarding Hobbs' claim under § 1396p(d)(4)(A), we conclude that this statute cannot support a § 1983 claim because it does not "unambiguously impose a binding obligation on the State[]," Blessing, 520 U.S. at 341. Hobbs reads this provision as obligating States to exempt special needs trusts when making eligibility determinations and thus conferring a right on Medicaid applicants to

- 13 -

shield assets held in a special needs trust from being counted as resources. Yet, the text of the statute and our case law belie his reading.

Section 1396p requires States to count certain trust assets as resources available to an individual when determining Medicaid eligibility. See § 1396p(d)(3)(B)(i) (if funds from an irrevocable trust could be used "for the benefit of the individual," such funds "shall be considered resources available to the individual"). Section 1396p(d)(4) exempts certain trusts, including special needs trusts, from that requirement. See Keith v. Rizzuto, 212 F.3d 1190, 1193 (10th Cir. 2000).

Interpreting the intersection of these two provisions, this court concluded in Keith that "Congress required that states generally count trust assets and income for purposes of determining Medicaid eligibility, but exempted [§ 1396p(d)(4)] trusts from that requirement. Thus, Congress left the States free to decide whether and under what conditions to recognize such trusts." 212 F.3d at 1193. We thus held that States "need not count [§ 1396p(d)(4)] trusts for eligibility purposes, but nevertheless may . . . opt to do so." Id. (emphases added). Although the statute might have been read in the first instance to require States to exempt special needs trusts, that construction is foreclosed by our opinion in Keith.[3]

---

[3] Keith considered "income trusts" established pursuant to § 1396p(d)(4)(B). Because the same statutory language in § 1396p(d)(4) exempts
(continued...)

Hobbs cites Lewis v. Rendell, 501 F. Supp. 2d 671 (E.D. Pa. 2007), a case in which the court determined § 1396p(d)(4)(A) does confer a private right of action. Id. at 687-88. There, the court analogized to § 1396p(c)(2)(D), which provides that an "individual shall not be ineligible for medical assistance" if "the State determines . . . that the denial of eligibility would work an undue hardship." § 1396p(c)(2), (c)(2)(D). Noting that an earlier case found a private right of action under § 1396p(c)(2)(D), the court expanded on that holding, reasoning that § 1396p(d)(4)(A) similarly "'refers to the eligibility for Medicaid and provides that eligibility will not be affected by the existence of a [special] needs trust.'" Lewis, 501 F. Supp. 2d at 688 (quoting Sullivan v. County of Suffolk, 1 F. Supp. 2d 186, 190 (E.D.N.Y. 1998)). As discussed above, however, this circuit does not interpret § 1396p(d)(4) as a mandatory provision. See Keith, 212 F.3d at 1193.

Hobbs' citation to Wong v. Daines, 582 F. Supp. 2d 475 (S.D.N.Y. 2008), is unavailing for the same reason. In that case, the district court concluded that § 1396p(d)(4)(A) unambiguously exempted all statutorily-compliant special needs trusts from eligibility determinations. Id. at 484. Based on that reading, the court held that § 1396p(d)(4)(A) is enforceable under § 1983. Id. at 479 n.2. Given this circuit's prior holding that States have discretion to count § 1396p(d)(4)

---

[3](...continued)
both special needs and income trusts from the operation of § 1396p(d)(3), we see no principled distinction that would allow us to read § 1396p(d)(4)(A) as a mandatory exclusion when we have read § 1396p(d)(4)(B) as a discretionary exclusion.

trusts as resources, Keith, 212 F.3d at 1193, we are not free to adopt the reasoning contained in Wong or Lewis even if we were to agree with that approach. See, e.g., United States v. Mitchell, 518 F.3d 740, 752 n.14 (10th Cir. 2008) ("We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." (quotation omitted)).

Finally, Hobbs relies on § 1396p(c)(2)(B), which states that "[a]n individual shall not be ineligible for medical assistance by reason of paragraph (1) to the extent that . . . the assets . . . were transferred to a trust (including a trust described in subsection (d)(4))." § 1396p(c)(2), (c)(2)(B), (c)(2)(B)(iv). The "paragraph (1)" reference relates to a provision requiring States to deny Medicaid coverage to individuals who "dispose[] of assets for less than fair market value" prior to applying for Medicaid. § 1396p(c)(1)(A). Although subsection (c)(2)(B) contains the type of mandatory language that might create a private right enforceable under § 1983, it is not at issue in this case. NMHSD did not deny Hobbs' application based on a determination that Hobbs transferred assets into the Trust for less than fair market value; it did so because it found the Trust was not being administered for Hobbs' sole benefit and was thus a countable resource. In other words, Hobbs cannot assert a § 1396p(c)(2)(B) claim because he was not deemed "ineligible for medical assistance by reason of [§ 1396p(c)(1)]." See § 1396p(c)(2).

We are compelled to conclude that § 1396p(d)(4)(A) does not require States to exempt special needs trusts from Medicaid eligibility determinations.  See Keith, 212 F.3d at 1193.  It follows that the subsection confers no binding obligation on the States to exclude special needs trusts from Medicaid eligibility consideration.  Accordingly, under the third prong of the Blessing test, we hold that § 1396p(d)(4)(A) is not enforceable through § 1983.

**B**

Hobbs' claim under § 1396a(a)(10)(C)(i) and 1396a(a)(17) ("the methodology provisions"), leads to the same conclusion.  Section 1396a(a) requires that

> [a] State plan for medical assistance must . . . if medical assistance is included for any group of individuals described in [42 U.S.C. § 1396d(a)[4]] . . . include a description of . . . the methodology to be employed in determining [Medicaid] eligibility, which shall be no more restrictive than the methodology which would be employed under the supplemental security income program . . . .

§ 1396a(a), (a)(10)(C), (a)(10)(C)(i), (a)(10)(C)(i)(III).  A "methodology is considered to be 'no more restrictive' if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance."  § 1396a(r)(2)(B).  Further, state Medicaid plans must

_____

[4] This section includes disabled individuals such as Hobbs.  See § 1396d(a)(vii).

- 17 -

include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . provide for taking into account only such income and resources as . . . would not be disregarded (or set aside for future needs) in determining [the applicant's] eligibility for [SSI] aid assistance or benefits.

§ 1396a(a)(17), (a)(17)(B).

Both methodology provisions fail the first prong of the Blessing test. Gonzaga University explained that the first prong requires "an unambiguously conferred right," 536 U.S. at 283, and that rights-conferring statutes must be "phrased in terms of the persons benefited" rather than speaking "only in terms of institutional policy and practice," id. at 284, 288 (quotation omitted). "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." Alexander v. Sandoval, 532 U.S. 275, 289 (2001).

Like the statute considered in Gonzaga University, the methodology provisions contained in § 1396a speak only to the administrator of a spending program. See § 1396a(a) ("A State plan for medical assistance must . . . ."). Unlike some subsections of § 1396a(a), the methodology provisions do not phrase their directions to program administrators in terms of the persons benefited. Their "focus is . . . removed from the interests of individual [applicants] and [they] clearly do[] not confer the sort of 'individual entitlement' that is enforceable under § 1983." Gonzaga Univ., 536 U.S. at 287 (quoting Blessing, 520 U.S. at 343).

Hobbs cites to numerous circuit cases that have found rights articulated in § 1396a(a)(10) enforceable under § 1983. Each of those cases, however, dealt with § 1396a(a)(10)(A)(i), which requires States to make Medicaid available to "all individuals" who meet certain criteria.[5]  See Spry v. Thompson, 487 F.3d 1272, 1275-76 (9th Cir. 2007); Watson v. Weeks, 436 F.3d 1152, 1159 (9th Cir. 2006); S.D. ex rel. Dickson v. Hood, 391 F.3d 581, 603 (5th Cir. 2004); Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 189-90 (3d Cir. 2004); Pediatric SpecialtyCare, Inc. v. Ark. Dep't of Human Servs., 293 F.3d 472, 478-79 (8th Cir. 2002); Westside Mothers v. Haveman, 289 F.3d 852, 863 (6th Cir. 2002); Miller ex rel. Miller v. Whitburn, 10 F.3d 1315, 1319 (7th Cir. 1993).

Hobbs, by contrast, relies on § 1396a(a)(10)(C) and § 1396a(a)(17). Unlike subsection (a)(10)(A), these methodology provisions are not "phrased with an unmistakable focus on the benefited class." Gonzaga Univ., 536 U.S. at 284 (quotation omitted). Central to subsection (a)(10)(A) is its reference to "all individuals." The methodology provisions contain no such language focusing on the benefited class. They mention individuals only tangentially. The first reference is included in a condition; the methodology requirement only applies "if medical assistance is included [in the state plan] for any group of individuals

---

[5] Our circuit previously assumed without deciding that a § 1396a(a)(10)(A) claim is cognizable under § 1983 because neither party raised the issue and it is not jurisdictional. Okla. Chapter of the Am. Acad. of Pediatrics v. Fogarty, 472 F.3d 1208, 1212 n.1 (10th Cir. 2007); Mandy R. v. Owens, 464 F.3d 1139, 1143 (10th Cir. 2006).

- 19 -

described in section 1396d(a)."  § 1396a(a)(10)(C).  Another reference to individuals is implicit in (a)(10)(C)(i)(III) because it is contained in the definition of "no more restrictive," a term used in that subsection.  "No more restrictive" means that in applying the methodology, "no individuals who are otherwise eligible [for SSI] are made ineligible for [Medicaid] assistance."  § 1396a(r)(2)(B).  Section 1396a(a)(10)(C)(i) also refers to individuals, but merely states that a state Medicaid plan must describe "the criteria for determining eligibility of [certain] individuals."  Finally, § 1396a(a)(17) contains similar tangential references to individuals, requiring that a state Medicaid plan "include reasonable standards" for various types of applicants.

None of these passing references provides the necessary "'rights-creating' language critical to showing the requisite congressional intent to create new rights."  Gonzaga Univ., 536 U.S. at 287.  The methodology provisions are not "phrased in terms of the persons benefited," id. at 284 (quotation omitted); they are unmistakably directed not to the benefited class but to the administrators of state Medicaid plans.  As in Gonzaga University, the individual references merely describe "the type of policy or practice" that a state official must follow.  Id. at 288.

Our conclusion that the methodology provisions do not provide rights enforceable under § 1983 comports with the holding in Watson, the only other circuit opinion we have found addressing the issue.  In that case, although the

Ninth Circuit found an enforceable right in § 1396a(a)(10)(A), 436 F.3d at 1159, it reached the opposite conclusion with respect to § 1396a(a)(17), id. at 1162. The Watson court held that the "key wording of section 1396a(a)(17) fails to even mention individuals or persons. . . .   [It] is not framed in terms of the individuals benefited, which is fatal under Gonzaga to the existence of a section 1983 right." Id. (citation omitted); see also Sanders ex rel. Rayl v. Kan. Dep't of Soc. & Rehab. Servs., 317 F. Supp. 2d 1233, 1250 (D. Kan. 2004) (§ 1396a(a)(17) "imposes only a duty on the State, and creates no rights in individuals, and thus does not support a right of action under § 1983").[6]  We agree with this analysis. Because the methodology provisions are not phrased in terms of Medicaid applicants, we cannot infer that Congress created private rights enforceable under § 1983 when it passed the methodology provisions.

---

[6] Several district court cases have concluded that subsection (a)(17) creates a private right enforceable under § 1983, but we find none persuasive.  In Mendez v. Brown, 311 F. Supp. 2d 134 (D. Mass. 2004), the defendant failed to brief the issue in any detail, and the district court did not mention the Gonzaga University requirement that a rights-conferring statute be phrased in terms of the benefited class.  Id. at 138-40.  Two other district court cases were decided prior to Gonzaga University.  Markva v. Haveman, 168 F. Supp. 2d 695, 711-12 (E.D. Mich. 2001); Smith v. Palmer, 24 F. Supp. 2d 955, 963-64 (N.D. Iowa 1998).

- 21 -

Accordingly, Hobbs may not enforce § 1396p(d)(4) or the methodology provisions contained in § 1396a by means of a § 1983 suit.[7] The district court's dismissal of Hobbs' statutory claims was therefore correct.

**IV**

Lastly, we address whether the New Mexico officials were entitled to qualified immunity as to Hobbs' constitutional claims. When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff must carry a two-part burden for his claims to survive. Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1150 (10th Cir. 2006). Under these circumstances, the plaintiff must show both "that the defendant's actions violated a constitutional or statutory right" and that "the right at issue was clearly established at the time of the defendant's unlawful conduct." Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001) (quotation omitted).

Qualified immunity shields government officials from "harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). This doctrine affords "protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

---

[7] Because we conclude that Hobbs may not contest violations of either of these statutes by means of a § 1983 suit, we do not address the merits of his various statutory arguments.

reasonable [official] that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled on other grounds by Pearson, 129 S. Ct. at 818.[8]

## A

Hobbs argues that defendants violated his substantive due process rights by determining his eligibility for Medicaid benefits under unwritten and unascertainable standards. He relies primarily on Morton v. Ruiz, 415 U.S. 199 (1974), and its statement that "the determination of eligibility cannot be made on an ad hoc basis by the dispenser of the funds." Id. at 232.

## 1

In Ruiz, the plaintiff challenged a decision by the Bureau of Indian Affairs ("BIA") to deny him benefits because he did not live on a reservation. Id. at 204-05. The statute at issue required that BIA "shall direct, supervise, and expend such moneys as Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians throughout the United States." 25 U.S.C. § 13. The

---

[8] Prior to Pearson, Saucier required courts to determine whether a constitutional violation had occurred before proceeding to consider whether the right at issue was clearly established. Saucier, 533 U.S. at 201. Pearson held that "the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 129 S. Ct. at 818. We begin by examining whether there was a constitutional violation and because we discern none, we do not address whether the alleged rights were clearly established.

BIA limited benefits eligibility to Indians residing on a reservation or otherwise under BIA jurisdiction based on a provision in the Indian Affairs Manual, which was unpublished and not generally available to the public. Ruiz, 415 U.S. at 204, 204 n.6, 208 n.10.

The Supreme Court concluded that Congress intended these benefits to extend to Indians living near reservations as well as those living on reservations. Id. at 230. It then noted that the BIA "has placed itself under the structure of the APA procedures" and its own internal rules required publication of benefit-eligibility standards in the Federal Register and codification in the Code of Federal Regulations. Id. at 233. "Where the rights of individuals are affected," the Court held, "it is incumbent upon agencies to follow their own procedures." Id. at 235.

Because the BIA had repeatedly represented to Congress that benefits would be available to Indians living near reservations, the Court deemed it "essential that the legitimate expectation of these needy Indians not be extinguished by what amounts to an unpublished ad hoc determination of the agency that was not promulgated in accordance with [the BIA's] own procedures, to say nothing of those of the Administrative Procedure Act." Id. at 236. "The denial of benefits to these respondents under such circumstances is inconsistent with the distinctive obligation of trust incumbent upon the Government in its

dealings with these dependent and sometimes exploited people." Id. (quotation omitted).

We do not read Ruiz to require state or federal agencies to promulgate detailed regulations for every conceivable circumstance that may arise in making benefits determinations. See Pulido v. Heckler, 758 F.2d 503, 506 (10th Cir. 1985) ("[A]s a general rule, an administrative agency is not required to promulgate detailed rules interpreting every statutory provision that may be relevant to its action."). "[T]he choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency." SEC v. Chenery Corp., 332 U.S. 194, 203 (1947); accord NLRB v. Bell Aerospace Co. Div. of Textron, Inc., 416 U.S. 267, 294 (1974) ("[T]he choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion."). Rather, the provision at issue in Ruiz was invalid because the BIA violated its own procedures when it did not publish the rule. The Supreme Court has subsequently clarified that Ruiz held "that the Bureau's failure to abide by its own procedures" coupled with "the distinctive obligation of trust incumbent upon the Government in" dealing with Indians rendered the provision invalid. Lincoln v. Vigil, 508 U.S. 182, 199 (1993). Moreover, this court has previously held that Ruiz was not decided on due process grounds but as a matter of statutory interpretation. See Vigil v. Andrus, 667 F.2d 931, 939 (10th Cir. 1982); see also Ruiz, 415 U.S. at 238 ("In

view of our disposition of the statutory issue, we do not reach the respondents' constitutional arguments. We intimate no views as to them.").[9]

We recognize that <u>absolute discretion</u> in government decision-making invites mischief. <u>See, e.g.</u>, <u>United States v. Wunderlich</u>, 342 U.S. 98, 101 (1951) (Douglas, J., dissenting) ("Absolute discretion is a ruthless master. It is more destructive of freedom than any of man's other inventions."); <u>Holmes v. N.Y. City Housing Auth.</u>, 398 F.2d 262, 265 (2d Cir. 1968) ("[A]bsolute and uncontrolled discretion in an agency of government vested with the administration of a vast program, such as public housing, would be an intolerable invitation to abuse."). Further, we are sympathetic to the special needs trust practitioners appearing as amici who seek guidance from NMHSD. Yet, we must also acknowledge that a rigid rule-making requirement "would make the administrative process inflexible and incapable of dealing with many of the specialized problems which arise." <u>Chenery Corp.</u>, 332 U.S. at 202; <u>cf.</u> <u>United States v. Platte</u>, 401 F.3d 1176, 1189 (10th Cir. 2005) ("The Constitution does not, however, impose impossible standards of specificity." (citation and alteration omitted)).

Balancing these somewhat competing principles, courts have found benefits determinations to be insufficiently guided by standards only when agencies acted

_____

[9] Even though <u>Ruiz</u> may well not have been a due process case, we nonetheless consider whether it bears on the due process right asserted because its basis is somewhat opaque.

absent any ascertainable limit on eligibility. In Ruiz, the statute at issue merely provided "for the benefit, care, and assistance of the Indians throughout the United States," 25 U.S.C. § 13; Ruiz, 415 U.S. at 205 n.7, and the BIA did not promulgate any publicly-available implementing regulations, Ruiz, 415 U.S. at 204, 204 n.6, 208 n.10. Similarly, in Baker-Chaput, 406 F. Supp. 1134 (D.N.H. 1976), a benefits statute simply stated: "Whenever a person in any town shall be poor and unable to support himself he shall be relieved and maintained by the overseers of public welfare of such town, whether he has a settlement there or not." Id. at 1137 (quoting N.H. Rev. Stat. Ann. § 165:1); see also Carey v. Quern, 588 F.2d 230, 232 (7th Cir. 1978) ("[D]efendants neither issued an Official Bulletin nor utilized any administrative guidelines governing eligibility determinations . . . ."); White v. Roughton, 530 F.2d 750, 753 n.8, 754 (7th Cir. 1976) (per curiam) (statute providing for "[f]inancial aid in meeting basic maintenance requirements for a livelihood compatible with health and well-being" vested "virtually unfettered discretion" in agency).

These cases upon which Hobbs relies establish, at most, a due process right to be free from eligibility determinations made without reference to any publicly-available standard. As did the Fourth Circuit in interpreting this line of cases, so do we acknowledge the possibility "that an apparent standard might be so vague as to be no standard at all," but "we are not aware of any pertinent case so holding." Harris v. Lukhard, 733 F.2d 1075, 1080 (4th Cir. 1984). We need not

delineate the precise boundary of the right Hobbs alleges because the standards

applied by defendants here are a far cry from no standards at all.

**2**

Eligibility for Medicaid is based on an extraordinarily complex set of

interlocking statutes, federal and state regulations, and other interpretive

documents.  In the present case, NMHSD was applying the eligibility standards

contained in 42 U.S.C. § 1396p(d) and the State Medicaid Manual, which

provides detailed guidance concerning treatment of trust assets as countable

resources.  See Centers for Medicare and Medicaid Services, U.S. Dep't of Health

& Human Servs., State Medicaid Manual, § 3259, available at

http://www.cms.hhs.gov/Manuals/PBM/list.asp [hereinafter State Medicaid

Manual].[10]  The State Medicaid Manual advises agencies to apply the exception

contained in §1396p(d)(4)(A) if the trust "is established for the sole benefit of the

individual."  State Medicaid Manual § 3259.7(A).  It defines "sole benefit" as

follows:

> [A] trust is considered to be established for the sole benefit of a
> spouse, blind or disabled child, or disabled individual if the trust
> benefits no one but that individual, whether at the time the trust is

---

[10] The State Medicaid Manual is not promulgated under the notice and comment provisions of the Administrative Procedure Act and thus does not "have the force and effect of law."  Ramey v. Reinertson, 268 F.3d 955, 963 (10th Cir. 2001).  We will defer to such interpretive documents, however, to the extent that they are consistent with the purposes of the federal statute and provide a reasonable interpretation thereof.  See id.; Reames v. Okla. ex rel. Okla. Health Care Auth., 411 F.3d 1164, 1170-71 (10th Cir. 2005).

established or any time in the future. . . . [A] trust that provides for funds or property to pass to a beneficiary who is not the spouse, blind or disabled child, or disabled individual is not considered to be established for the sole benefit of one of these individuals.

§ 3257.B.6.

These detailed provisions—which themselves comprise only a small corner of the eligibility regulation universe—bear little resemblance to the entirely generalized spending statutes considered in the cases Hobbs cites. See Ruiz, 415 U.S. at 205 n.7; Carey, 588 F.2d at 232; White, 530 F.2d at 753 n.8, 754; Baker-Chaput, 406 F. Supp. at 1137. Unlike those provisions, which relate no information as to who may be eligible for benefits, Hobbs was well informed of the standard used to govern whether his Trust would be a countable resource for determining Medicaid eligibility: The Trust would be exempt if it "benefits no one but [Hobbs], whether at the time the trust is established or any time in the future." State Medicaid Manual § 3257.B.6.

The evidence presented to the district court confirms that this "sole benefit"[11] standard was applied in Hobbs' case. Zenderman testified that she

_____

[11] Hobbs argues in a footnote that the "sole benefit" standard impermissibly restricts the reach of the statute, which provides that a special needs trust must be "established for the benefit of [the disabled] individual." 42 U.S.C. § 1396p(d)(4)(A). We have already held that Hobbs does not possess cognizable rights under this subsection. Moreover, as noted above, see supra note 10, we owe some deference to the Centers for Medicare and Medicaid Services' interpretation of the Social Security Act as embodied in the State Medicaid Manual as long as its interpretation is consistent with statutory language, statutory purpose, and is reasonable. We conclude that its interpretation of

(continued...)

determined Hobbs' Trust was a countable resource based on sections 3259.7(A) and 3257.B.6 of the State Medicaid Manual. She cited those same provisions in her July 29, 2004 letter to Hobbs' attorney. She further testified that her interpretation of the Trust was merely an application of the "sole benefit" standard. Although Hobbs' attorney repeatedly questioned Zenderman regarding "unwritten policies" of NMHSD, Zenderman was clear that the department "approach[es] each case individually," and she was required to "take each trust and each case on its own merit and look at the individual facts in the individual situation." Contrary to Hobbs' assertion, the defendants did not admit that they operated without written guidelines. Zenderman simply noted that she did not know of any written rules that governed the specific issue of whether payments from a minor's trust to the minor's parent for routine care were for the sole benefit of the minor.

---

[11](...continued)
§ 1396p(d)(4)(A) satisfies that standard.

When only one criterion is articulated in a statute, we have read the statute to compel exclusion of other criteria. See United Keetoowah Band of Cherokee Indians of Okla. v. U.S. Dep't of Housing and Urban Development, 567 F.3d 1235, 1242 (10th Cir. 2009) (reading statute delegating authority to U.S. Department of Housing and Urban Development to promulgate a formula based on factors reflecting need as barring other considerations). Similarly, in requiring that a special needs trust be established "for the benefit of" a disabled individual, it is at least reasonable to conclude that Congress did not mean that a special needs trust must merely include the disabled individual as one of many beneficiaries. Our reading of the statute relies on ordinary application of the maxim expressio unius est exclusio alterius, see, e.g., In re Villa W. Assocs., 146 F.3d 798, 805 n.6 (10th Cir. 1998), combined with a certain level of deference to the agency's interpretation.

The mere fact that written regulations do not cover every contingency does not rise to the level of a constitutional violation. Substantive due process does not command an agency to promulgate a Napoleonic Code. At most, Hobbs was entitled to have his eligibility determination made pursuant to a written, ascertainable standard. Defendants here applied such a standard in determining eligibility. Accordingly, we conclude that the defendants did not violate Hobbs' substantive due process rights.

**B**

Hobbs also argues that defendants violated his procedural due process rights. We see no merit to this contention. "The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quotation omitted). Hobbs was afforded a "fair hearing" pursuant to N.M. Stat. § 27-3-3 during which he was represented by counsel, permitted to submit evidence to an ALJ, and for which NMHSD bore the burden of proving its position by a preponderance of the evidence. The only defect Hobbs claims in this process is that the hearing determination, like the eligibility determination generally, was based on unwritten, unascertainable standards. As discussed above, we reject this characterization of defendants' actions. Thus, Hobbs' procedural due process rights were not violated.

**V**

For the foregoing reasons, the judgment of the district court is

**AFFIRMED**.