**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 20, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOSE ROJAS,

      Plaintiff – Appellant,

v.

JAMES HEIMGARTNER,

      Defendant – Appellee.

No. 14-3178
(D.C. No. 5:13-CV-03073-JTM-KGG)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **LUCERO**, and **MCHUGH**, Circuit Judges.

---

Jose Rojas, a Kansas state prisoner proceeding pro se, appeals the district court's

dismissal of his 42 U.S.C. § 1983 suit. Exercising jurisdiction under 28 U.S.C. § 1291,

---

[*] After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the determination
of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is not
binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed.
R. App. P. 32.1 and 10th Cir. R. 32.1.

we affirm.

## I

The policies of the prison in which Rojas is incarcerated permit inmates whose religion is classified as "Native American" to wear white bandanas during worship services. Muslim and Rastafarian inmates may wear close-fitting hemispheric black caps. In 2011, Rojas submitted a request to wear a bandana. The Director of Religious Programs at the Kansas Department of Corrections responded that bandanas could be worn during group worship services. Rojas then submitted a grievance to Warden James Heimgartner requesting permission to wear colored bandanas and to wear bandanas outside of group worship services. Around the time Rojas made his request, fifteen other prisoners, most of whom were members or suspected members of prison gangs, also sought permission to wear bandanas. Rojas' request was ultimately denied because of concerns that individuals in prison gangs could use colored bandanas to communicate coded messages.

Following the denial of his grievance, Rojas filed suit under § 1983. He alleged violations of his First and Fourteenth Amendment rights, as well as a violation of the American Indian Religious Freedom Act, 42 U.S.C. § 1996. The district court granted summary judgment against Rojas. He now appeals.

## II

We review the grant of summary judgment de novo. Hobbs ex rel. Hobbs v.

Zenderman, 579 F.3d 1171, 1179 (10th Cir. 2009). A party is entitled to summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law. Id. Because Rojas is proceeding pro se, we construe his filings liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).

**A**

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citation omitted). However, "a prison regulation imping[ing] on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." Id. at 349 (quotation omitted). To state a claim for a free exercise violation, a prisoner must show that a prison regulation "substantially burdened . . . sincerely-held religious beliefs." Boles v. Neet, 486 F.3d 1177, 1182 (10th Cir. 2007). Once the prisoner has made this showing, "the question of whether a prison regulation reasonably curtails constitutional rights requires close examination of the facts . . . , the specific regulation under review, and the alleged justifications for it." Id. at 1181. In making this determination, we consider:

> (1) whether a rational connection exists between the prison policy
> regulation and a legitimate governmental interest advanced as its
> justification; (2) whether alternative means of exercising the right are
> available notwithstanding the policy or regulation; (3) what effect
> accommodating the exercise of the right would have on guards, other
> prisoners, and prison resources generally; and (4) whether ready, easy-to-

-3-

implement alternatives exist that would accommodate the prisoner's rights. Kay v. Bemis, 500 F.3d 1214, 1219 (10th Cir. 2007) (quotation omitted).

We agree with the district court that these factors cut against Rojas. The record shows that prisoners requesting to wear colored headbands outside of group worship raised "valid security concerns." Boles, 486 F.3d at 1183; cf. Young v. Lane, 922 F.2d 370, 375 (7th Cir. 1991) (upholding a restriction on the wearing of religious headwear on the basis that a security interest had been adequately identified). Rojas was permitted an alternative means of exercising his religious rights by wearing a white bandana during group worship. Cf. id. at 376 (noting that the policy at issue passed muster in part because it permits the limited wearing of religious headwear). Accommodating Rojas' religious rights in his preferred fashion would require close monitoring by guards to prevent the transmission of gang messages, and could lead to gang activity that injures other prisoners. Cf. id. at 377 (noting that permitting the wearing of religious headwear "comes at the cost of less liberty and safety for the entire [prison] community, both inmates and guards"). Finally, Rojas has not identified an obvious alternative that would accommodate his rights without posing similar problems.[1]

**B**

---

[1] We note that Rojas has not raised a claim under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc et seq.

"[T]o assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." Brown v. Montoya, 662 F.3d 1152, 1172-73 (10th Cir. 2011) (quotation omitted). Additionally, plaintiffs in a prison context have the burden of demonstrating that "the difference in treatment was not reasonably related to legitimate penological interests." Fogle v. Pierson, 435 F.3d 1252, 1261 (10th Cir. 2006) (quotation omitted). Rojas asserts that the regulations deny him the equal protection of the laws because they permit members of other religious groups to wear headwear outside of religious services, but deny him the right to wear colored bandanas or wear bandanas outside a group worship setting.

The district court was correct to deny Rojas' equal protection claim. Although the regulations permit black kufi caps or tams and disallow bandanas, the former types of headwear do not present the same security concerns as bandanas, justifying differential treatment in light of legitimate penological interests. See Benjamin v. Coughlin, 905 F.2d 571, 579 (2d Cir. 1990) (upholding, against an equal protection challenge, a policy that disallowed Rastafarian crowns but allowed yarmulkes and kufis), disapproved of on other grounds, Frazier v. Dubois, 922 F.2d 560, 562 n.2 (10th Cir. 1990). "There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence." Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 136 (1977).

**C**

As the district court correctly observed, the American Indian Religious Freedom Act does not create a cause of action.  <u>Lyng v. Nw. Indian Cemetery Protective Ass'n</u>, 485 U.S. 439, 455 (1988).  Accordingly, Rojas' claim under this statute is unavailing.

**III**

The judgment of the district court is **AFFIRMED**.  We **GRANT** Rojas' motion to proceed in forma pauperis.


Entered for the Court


Carlos F. Lucero
Circuit Judge