13-4164-cv
Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of October, two thousand fourteen.

PRESENT:  RALPH K. WINTER,
            REENA RAGGI,
            PETER W. HALL,
                 *Circuit Judges.*

-----------------------------------------------------------------------

LYNNEA WESLEY-DICKSON,
                *Plaintiff-Appellant*,

       v.                                   No. 13-4164-cv

WARWICK VALLEY CENTRAL SCHOOL DISTRICT, CHRIS FOX, in her individual and official capacity, MARIJANE REINHARD, in her individual and official capacity, and KATHY CARMODY, in her individual and official capacity,
                *Defendants-Appellees.*[*]

-----------------------------------------------------------------------

APPEARING FOR APPELLANT:    MICHAEL   H.   SUSSMAN,   Sussman & Watkins, Goshen, New York.

---

[*] The Clerk of Court is directed to amend the official caption as shown above.

1

APPEARING FOR APPELLEES:        SCOTT P. QUESNEL (Patrick J. Fitzgerald, *on the brief*), Girvin & Ferlazzo, P.C., Albany, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (John G. Koeltl, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on September 26, 2013, is AFFIRMED.

Plaintiff Lynnea Wesley-Dickson appeals from an award of summary judgment in favor of defendants on her claims of race (African-American) and disability (cancer) discrimination in employment under (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), see 42 U.S.C. § 2000e et seq.; (2) the Americans with Disabilities Act ("ADA"), see 42 U.S.C. § 12101 et seq.; (3) 42 U.S.C. § 1981; (4) 42 U.S.C. § 1983; and (5) New York State Human Rights Law ("NYSHRL").   We review a summary judgment award de novo, construing the evidence in the light most favorable to the non-moving party.   See Lynch v. City of New York, 737 F.3d 150, 156 (2d Cir. 2013).   We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.      Discrimination Claims

Plaintiff's claims of race and disability discrimination in having her probationary period as Supervisor of Special Education extended and in being denied tenure are evaluated under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S.

2

792 (1973). See McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013) (applying McDonnell Douglas's Title VII framework to ADA claim); Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013) (same as to § 1981 and § 1983 claims); Dawson v. Bumble & Bumble, 398 F.3d 211, 217 (2d Cir. 2005) (same as to NYSHRL claim). Under this rubric, "plaintiff bears the initial burden of establishing a prima facie case of discrimination." Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008). If she does so, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action," id. (quoting McDonnell Douglas Corp. v. Green, 411 U.S. at 802), whereupon "the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext" for unlawful discrimination, Kirkland v. Cablevision Sys., --- F.3d ---, 2014 WL 3686090, at *2 (2d Cir. July 25, 2014).

Plaintiff challenges the district court's determination that she failed to carry either her step one or step three burdens. We need not review the former because, even if we were to resolve that issue in plaintiff's favor, we nevertheless conclude, largely for the reasons stated by the district court in its detailed opinion, see Wesley-Dickson v. Warwick Valley Cent. Sch. Dist., 973 F. Supp. 2d 386 (S.D.N.Y. 2013), that plaintiff failed to raise a triable issue of fact at the third step of analysis.

At the outset, we note that plaintiff confronted a particularly high hurdle at step three because not only had defendants proffered a non-discriminatory reason—poor work performance—for the challenged actions, but also they detailed particular concerns with

3

plaintiff's ability timely to organize and clearly to write special education plans for disabled children that persisted throughout her employment. Indeed, plaintiff's first supervisor, Tammy Cosgrove—whom plaintiff does not charge with discriminatory bias and who praised plaintiff's interpersonal skills—repeatedly noted defects in plaintiff's writing, editing, and ability timely to complete tasks, and expressed "grave concern" as to plaintiff's "ability to adequately perform a major component of her job." J.A. 278. Plaintiff's three subsequent supervisors and then-Superintendent Dr. Frank Greenhall echoed these same concerns.

In nevertheless arguing that these persistent work performance concerns were a pretext for race and disability discrimination, plaintiff charges the district court with ignoring her responses to "overblown" negative evaluations. Appellant's Br. 36. Because plaintiff failed adequately to raise this argument below, we deem it forfeited on appeal. See Zalaski v. City of Hartford, 723 F.3d 382, 395 (2d Cir. 2013). We turn to plaintiff's preserved arguments.

a.     Race Discrimination

Plaintiff argues that various comments by named defendants or school district supervisors raised a triable issue that racial bias, rather than poor work performance, was a motivating reason for the challenged employment actions. Specifically, she alleges that, in September 2007, while she was undergoing chemotherapy and wearing a headscarf, defendant Reinhard told her that when she spoke in a southern accent she sounded "like

4

Aunt Jemima" and as if she were "down on the plantation." J.A. 445. Plaintiff also attributes to defendant Fox a September 2007 remark dismissing a school district diversity conference to be led by African-Americans as "a waste of her time." Id. at 432. Finally, plaintiff asserts that, in May 2006, Superintendent Greenhall recounted that he had been severely assaulted by "six black boys," but had "showed them." Id. at 417. She further alleges that in response to concerns expressed no later than March 2008 by union representative Mary Jane Hamburger about plaintiff's negative performance evaluations, Greenhall stated that he was "not afraid to fire black people." Id. at 452.

In determining whether remarks are probative of discriminatory intent, a court properly considers

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010).

Assuming that a reasonable juror could identify racial bias in the cited remarks, we nevertheless conclude that they do not raise a triable issue of employment discrimination. Reinhard did not review plaintiff's work, write any performance reviews, or otherwise influence school superintendents' decisions to extend plaintiff's probationary term or to deny her tenure. See Tomassi v. Insignia Fin. Grp., 478 F.3d 111, 115 (2d Cir. 2007) (holding that remarks by someone other than decision-maker "may have little tendency to

5

show that the decision-maker was motived by the discriminatory sentiment expressed in the remark"), abrogated on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009) (holding that under Age Discrimination in Employment Act plaintiff must prove that age was "'but-for' cause of the challenged employer decision"); cf. Nagle v. Marron, 663 F.3d 100, 117–18 (2d Cir. 2011) (observing that under "cat's paw" theory, "final decision maker that relies entirely on an improperly motivated recommendation from a subordinate may render the municipality liable"). Moreover, Reinhard's comments were made 6 months before plaintiff was first recommended not to receive tenure and 18 months before tenure was denied. See Tomassi v. Insignia Fin. Grp., 478 F.3d at 115 (holding that more remote and oblique remarks are in relation to adverse action, less they prove discriminatory motivation).

Although Fox was one of plaintiff's reviewing supervisors, and although Superintendents Greenhall and Bryant indicated that they relied on performance reviews in making tenure recommendations, both the context of Fox's isolated comment (about a district conference) and its timing (6 months before plaintiff's probationary term was extended and 18 months before she was denied tenure) are too remote and oblique to raise a triable issue of pretext. See id. (stating that comment is probative insofar as it demonstrates that adverse action is motivated by discriminatory intent); see also Antonia v. Sigma Network, Inc., 458 F.3d 1177, 1184 (10th Cir. 2006) (holding that isolated racist comment by one of four decision-makers made approximately 9 months before termination

6

did not raise issue of fact as to pretext). This is particularly so given that Fox's criticisms of plaintiff's work only reiterate those earlier voiced by supervisor Cosgrove, whom plaintiff does not accuse of bias. See Weinstock v. Columbia Univ., 224 F.3d 33, 45 (2d Cir. 2000) (observing that "consistency of the viewpoint expressed" by supervisor "further supports" employer's "proffered non-discriminatory reason" for denying tenure); cf. Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 125 (2d Cir. 2004) (identifying pretext where "sudden decline in performance evaluations" occurred "only after the alleged discriminatory comments began").[1]

Greenhall's May 2006 report of a past assault by "black boys" is also too remote in time and oblique in context to support an inference of pretext. See Tomassi v. Insignia Fin. Grp., 478 F.3d at 115. As for his statement to Hamburger, plaintiff has failed to demonstrate admissibility. See CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2014) (requiring admissible evidence in opposition to summary judgment). Hamburger's alleged recounting of Greenhall's statement—which she denies—to plaintiff was made in her capacity as a union representative, not as an agent of

---

[1] In the district court, plaintiff argued that Fox's disparate discipline of her compared to white and non-disabled employees was an additional adverse employment action. Because she does not pursue that argument on appeal, we deem it abandoned. See Hoffler v. Bezio, 726 F.3d 144, 154 n.9 (2d Cir. 2013). To the extent she argues that disparate discipline shows that Fox's performance criticisms were pretextual, plaintiff fails to demonstrate that she was sufficiently similarly situated to her comparators to support such an inference, see Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64–65 (2d Cir. 1997) (affirming grant of summary judgment where Title VII plaintiff failed to demonstrate that other employees were "similarly situated in all material respects" (internal quotation marks omitted)), particularly where, as here, Fox's negative evaluations reiterate Cosgrove's.

7

defendant school district, and thus does not qualify as a non-hearsay statement of a party opponent under Fed. R. Evid. 801(d)(2)(D).  See generally Crigger v. Fahnestock & Co., 443 F.3d 230, 238 (2d Cir. 2006) (holding that 801(d)(2)(D) proponent must establish (1) existence of agency relationship, (2) that statement was made in course of that relationship, and (3) that statement relates to matter within scope of agency).

In sum, even when the record is viewed in the light most favorable to plaintiff, we must conclude, as the district court did, that no reasonable jury could find that detailed and consistent concerns with plaintiff's work performance were only a pretext for adverse employment actions that were really motivated by racial bias.  See Richardson v. Comm'n on Human Rights & Opportunities, 532 F.3d 114, 125–26 (2d Cir. 2008) (upholding summary judgment given overwhelming evidence that termination was for non-discriminatory reason).

b.      Disability Discrimination

The same conclusion obtains with respect to plaintiff's step-three burden as to disability discrimination.  No reasonable jury could infer disability discrimination from the fact that Superintendent Greenhall—who himself later died of cancer—occasionally inquired as to plaintiff's health.  The inquiries were solicitous and not reflective of bias. Nor is a different conclusion warranted because the inquiries were posed around March 2008, when Greenhall stated his intent to recommend against granting plaintiff tenure. Greenhall had indicated as early as May 2007 that he might not support plaintiff's tenure.

8

In these circumstances, neutral inquiries about the health of an employee whose illness was well known are not enough to admit a reasonable jury finding that consistent poor performance reviews were a pretext for disability discrimination in denying plaintiff tenure.

Plaintiff argues that pretext is also evident in the December 2006 statement of supervisor Carmody when plaintiff requested leave to undergo chemotherapy, i.e., that Carmody had had a colleague on chemotherapy who became forgetful and came to work unkempt. Even if we assume that this statement evinced some disability bias, the context and timing are too remote from either the 2008 extension of plaintiff's probationary employment or the 2010 denial of tenure to support a conclusion that disability bias was the real reason for these adverse actions. See Tomassi v. Insignia Fin. Grp., 478 F.3d at 115. Nor can such an inference be drawn from the fact that Carmody gave plaintiff a negative performance review in June 2007 because the concerns she expressed only reiterated those already raised by Cosgrove.

Accordingly, summary judgment was correctly awarded in favor of defendants on plaintiff's claims of race and disability discrimination.

2.      Hostile Work Environment

Plaintiff relies on the same comments by Reinhard, Greenhall, Fox, and Carmody to challenge the summary judgment award on her Title VII, ADA, and NYSHRL claims of a

hostile work environment.[2]

To prevail on a hostile environment claim, plaintiff must show (1) "a workplace that is so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered," Desardouin v. City of Rochester, 708 F.3d 102, 105 (2d Cir. 2013) (internal quotation marks omitted); and (2) a "specific basis" for imputing the challenged conduct to the employer, Duch v. Jakubek, 588 F.3d 757, 762 (2d Cir. 2009). Like the district court, we conclude that the statements attributed to defendants were too infrequent and insufficiently severe to interfere unreasonably with plaintiff's work performance. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); accord Desardouin v. City of Rochester, 708 F.3d at 105; see also Thomas v. iStar Fin., Inc., 652 F.3d 141, 151 (2d Cir. 2011) (affirming dismissal of hostile work environment claim challenging "occasional and isolated" events that did not alter terms and conditions of employment (internal quotation marks omitted)). Thus, summary judgment was correctly entered in favor of defendants on plaintiff's hostile work environment claim.

3. Retaliation

We similarly uphold the award of summary judgment on plaintiff's retaliation

---

[2] Although this court has not yet decided whether a hostile work environment claim may be made under the ADA, we need not resolve that question here because plaintiff's claim fails, in any event, on the merits. See Margherita v. FedEx Exp., 511 F. App'x 71, 73 (2d Cir. Feb. 7, 2013) (summary order) ("Assuming that the ADA provides a basis for a hostile work environment claim, an issue not yet decided by this Court, Margherita has failed to present sufficient evidence to support this claim.").

claims under Title VII, the ADA, § 1981, and the NYSHRL, which are also evaluated under the McDonnell Douglas framework and fail at the third step of analysis. See Kirkland v. Cablevision Sys., 2014 WL 3686090, at *1 (Title VII); Widomski v. State Univ. of N.Y. (SUNY) at Orange, 748 F.3d 471, 476 (2d Cir. 2014) (ADA); Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (NYSHRL); Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (§ 1981).[3]

The only protected activity plaintiff asserts is her May 2008 NYSHRL complaint alleging race and disability discrimination. Because Bryant's recommendation that plaintiff not be granted tenure occurred nearly two years later in March 2010, the district court correctly concluded that plaintiff failed to carry her step-three burden to adduce evidence supporting an inference that poor work performance was only a pretext for the retaliation that really motivated this adverse employment action. See Bucalo v. Shelter

---

[3] Unlike with her discrimination claims, plaintiff must establish under Title VII that unlawful retaliation "was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." Zann Kwan v. Andalex Grp., 737 F.3d 834, 845 (2d Cir. 2013) (quoting University of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2526, 2533 (2013)). This "but-for" standard might also apply to her ADA retaliation claim. See Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 321 (6th Cir. 2013) (applying "but-for" causation to ADA claims in light of Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009), which interpreted Age Discrimination in Employment Act); cf. Parker v. Columbia Pictures Indus., 204 F.3d 326, 336 (2d Cir. 2000) (holding pre-Gross that "mixed-motive analysis available in the Title VII context applies equally to cases brought under the ADA"). We need not decide that question, however, or even apply "but for" causation because plaintiff fails to satisfy the more lenient "motivating factor" standard.

Isl. Union Free Sch. Dist., 691 F.3d 119, 131 (2d Cir. 2012) (stating that although no bright line establishes causal relationship between protected activity and retaliatory action, "courts in this circuit have typically measured that gap as a matter of months, not years").

Plaintiff urges us to view her protected activity as continuing through the litigation of her NYSHRL complaint, which she submits then led to her March 17, 2010 filing of the complaint in this action, followed two days later by the recommendation that she be denied tenure. Even if we were to adopt this view, plaintiff would not be entitled to relief from summary judgment because the record does not support an inference of retaliation while plaintiff litigated her NYSHRL complaint. To the contrary, she remained employed during this litigation, was permitted to take a year-long leave of absence, and upon her return, was granted her request to be assigned new supervisors and different responsibilities.[4] In such circumstances, and particularly in light of the persistent concerns with her substantive work performance that prompted Greenhall, even before any protected activity, to signal that he might well not recommend tenure, plaintiff fails to raise a triable issue of fact that protected activity was a motivating factor in the decision not to award her tenure. See El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) (holding temporal proximity between protected activity and adverse employment action "insufficient . . . to bring forward some evidence of pretext"); see also Abrams v. Dep't of

---

[4] Plaintiff does not argue that her leave of absence diminishes the effect of the passage of time between her supervisors' alleged discriminatory remarks and the adverse employment actions.

12

Pub. Safety, --- F.3d ---, 2014 WL 4191178, at *8 (2d Cir. Aug. 26, 2014) (observing that five-month interval between protected activity and adverse employment action might establish prima facie retaliation case, but fails to raise triable issue of pretext).

4.    Conclusion

We have considered plaintiff's remaining arguments and conclude that they are without merit.[5]   We therefore AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

---

[5] Because we dispose of plaintiff's race and disability claims on the merits, we need not address the question of whether she properly presented her claims to the school district under N.Y. Educ. Law § 3813(1).