**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 15, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MOE AMAN, f/k/a Mohamed Aman,

    Plaintiff - Appellant,

v.

DILLON COMPANIES, INC., a Kansas
corporation, d/b/a King Soopers,

    Defendant - Appellee.

Nos. 14-1461 & 15-1054
(D.C. No. 1:11-CV-02973-JLK)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

Moe Aman filed suit against his former employer, Dillon Companies, Inc.

d/b/a King Soopers ("King Soopers"), advancing numerous discrimination and

retaliation claims. The district court granted King Soopers summary judgment as to

some claims and judgment as a matter of law as to the remainder. Aman appeals.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Aman began working as a produce clerk at King Soopers store #5 in 2006.

Jack Ruby was the store manager, Don Gordy was the produce manager, and Chris

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Bateson was the assistant produce manager. On May 7, 2007, Gordy deliberately slammed a produce cart into Aman, injuring his back. Gordy was terminated because of the incident. Aman was out of work for several weeks, during which time he received workers' compensation benefits.

After returning from the injury, Aman continued to work in the produce department subject to medical restrictions. In October 2007, a physician concluded that Aman had reached maximum medical improvement ("MMI") and imposed permanent restrictions. An independent medical examination likewise suggested a permanent restriction of no lifting greater than thirty pounds.

In April 2008, King Soopers determined that Aman's permanent restriction rendered him unable to continue working as produce clerk. Effective May 11, it reclassified him to the service desk, a position with a substantially lower rate of pay. In response, Aman requested a leave of absence, but was informed he was ineligible for leave because King Soopers had a position he could fill despite his restrictions. After learning of the reclassification and his ineligibility for leave, Aman reported that he had been harassed and discriminated against throughout his time working at the store.

Aman was scheduled to work at the service desk from May 13 through May 17, 2008. He called in sick for each of those days, but did not speak to any of his direct supervisors. Aman also called into the store on May 17 to report that he would be out sick for the entire next week, when he was scheduled to work from May 20 to

2

23. Ruby terminated Aman on May 27 for being absent without leave. Additional facts relevant to particular issues raised on appeal will be discussed infra.

Aman filed suit against King Soopers on November 15, 2011, advancing numerous claims. The district court granted King Soopers' motion for summary judgment on several claims. The remaining claims proceeded to trial. At the close of all evidence, the district court granted judgment as a matter of law in favor of King Soopers and dismissed the case. Aman timely appealed.

## II

Aman appeals the district court's grant of summary judgment on his wrongful discharge in violation of public policy claim. We review the grant of summary judgment de novo. Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1179 (10th Cir. 2009). A party is entitled to summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law. Id.

Aman claims that King Soopers violated Colorado law by terminating him in retaliation for exercising his workers' compensation rights. Although it was not the basis for the district court's decision, King Soopers argues that Aman's claim is time-barred. A claim for wrongful discharge accrues upon termination and is subject to a two-year limitations period. See Colo. Rev. Stat. § 13-80-102(1)(a); Williams v. Crop Prod. Servs., Inc., 361 P.3d 1075, 1077 (Colo. App. 2015), cert. denied, No. 15SC445, 2015 WL 7423588 (Colo. Nov. 23, 2015). Aman was terminated on May 27, 2008. He filed suit on November 15, 2011, more than two years later.

3

Aman does not substantively respond to the timeliness argument. Instead, he contends King Soopers waived this affirmative defense by failing to raise it in a motion for summary judgment. A statute of limitations defense may be waived if it is not pled. Youren v. Tintic Sch. Dist., 343 F.3d 1296, 1302 (10th Cir. 2003). But King Soopers pled that Aman's claims were time-barred in its answer. And the fact that King Soopers did not rely on the statute of limitations in its motion for summary judgment is not dispositive. Rather, "[w]e may affirm on any ground adequately presented to the district court, or on a ground not raised in the district court provided that the record is sufficiently clear [and] both parties had an adequate opportunity to develop the record on the issue." Griffith v. Colo., Div. of Youth Servs., 17 F.3d 1323, 1328 (10th Cir. 1994). Whether to do so is committed to our discretion. United States v. Damato, 672 F.3d 832, 844 (10th Cir. 2012). We have identified several factors relevant in considering an alternative ground: "[1] whether the ground was fully briefed and argued here and below; [2] whether the parties have had a fair opportunity to develop the factual record; and [3] whether, in light of factual findings to which we defer or uncontested facts, our decision would involve only questions of law." Id. (quotation omitted). Although the timeliness issue was not briefed below, the other two factors counsel in favor of King Soopers. Accord id. (absence of first factor not conclusive). We exercise our discretion to affirm the district court's grant of summary judgment because Aman's wrongful discharge claim was untimely.

4

## III

Aman challenges the district court's grant of judgment as a matter of law on four claims: (1) hostile work environment; (2) termination on the basis of race; (3) Americans with Disabilities Act ("ADA") retaliation; and (4) Title VII retaliation. We review a district court's grant of judgment as a matter of law de novo. Murphy Oil USA, Inc. v. Wood, 438 F.3d 1008, 1012 (10th Cir. 2006). Judgment as a matter of law is granted "only if all of the evidence, viewed in the light most favorable to the nonmoving party, reveals no legally sufficient evidentiary basis to find for the nonmoving party." Jones v. United Parcel Serv., Inc., 674 F.3d 1187, 1195 (10th Cir. 2012) (quotation omitted).

## A

Aman claims he suffered a hostile work environment due to his race. To succeed on a hostile work environment claim, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Morris v. City of Colo. Springs, 666 F.3d 654, 664 (10th Cir. 2012) (quotation omitted). We examine the "totality of the circumstances, and consider such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quotation and alteration omitted).

5

Aman brings hostile work environment claims under both Title VII and 42 U.S.C. § 1981. Under Title VII, an employee must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the discriminatory conduct. 42 U.S.C. § 2000e-5(e)(1).[1] And he must file a civil complaint under § 1981 within four years of the alleged conduct. 28 U.S.C. § 1658; Tademy v. Union Pac. Corp., 614 F.3d 1132, 1152 (10th Cir. 2008). The parties agree that Aman filed his EEOC charge on March 13, 2009, and thus he may challenge conduct occurring on or after May 17, 2008, under Title VII. And he filed his federal complaint on November 15, 2011, and thus he may challenge conduct occurring on or after November 15, 2007, under § 1981.[2]

Under certain circumstances, hostile work environment claims may rely in part on conduct that occurred outside the limitations period. "[A]s long as an act contributing to a hostile work environment took place" within the limitations period, "a court may consider the complete history of acts comprising that hostile work environment." Duncan v. Manager, Dep't of Safety, 397 F.3d 1300, 1308 (10th Cir. 2005) (quotation omitted). But to consider pre-limitations period conduct, those acts

---

[1] The parties agree that Aman filed a complaint with a state agency as required to trigger the 300-day limitations period under 42 U.S.C. § 2000e-5(e).

[2] Aman argues that King Soopers waived any timeliness argument as to the hostile work environment claim because it failed to cross appeal the district court's summary judgment ruling indicating that the claim was timely. But King Soopers obtained judgment in its favor on Aman's hostile work environment claims, and "seeks no relief which was not granted it in the court below and properly may raise any issue which was there considered even though it asserts that the court was in error." Emerson v. Labor Inv. Corp., 284 F.2d 946, 949 (10th Cir. 1960).

6

must comprise "part of the same actionable hostile work environment practice" that continued into the limitations period. Id. (quotation omitted). "[A] series of alleged events comprises the same hostile environment where the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." Id. at 1309 (quotation and alteration omitted).

Aman cites to three instances in which racial slurs were used against him. He testified that Gordy called him an "African monkey" and an "African lion," and that Bateson called him a "lazy African." He also asserts that one of his co-workers heard Gordy state that he did not like black people. Aman also relies heavily on the Gordy assault. All of these incidents occurred before November 15, 2007, and thus fall outside of the limitations periods.

Aman further cites to a litany of facially neutral conduct that occurred after he returned to work following his injury—some of which occurred within the limitations periods. "[F]acially neutral abusive conduct can support a finding of racial animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly racially-discriminatory conduct." Hernandez v. Valley View Hosp. Ass'n, 684 F.3d 950, 960 (10th Cir. 2012) (quotation and alterations omitted). Such conduct may support a hostile work environment claim if "a jury, viewing the evidence in context, reasonably could view all of the allegedly harassing conduct as the product of racial hostility." Id. (quotation and alterations omitted).

7

But Aman fails to provide evidence from which a reasonable juror could conclude that the facially neutral events which occurred within the limitations period were part of "the same actionable hostile work environment practice" that he claims began prior to his injury. Duncan, 397 F.3d at 1308 (quotation omitted). Several of the incidents Aman cites are wholly unrelated to his pre-limitations period work environment. For example, many relate to claimed procedural irregularities that occurred in connection with his termination. And several alleged actions happened after Aman had been terminated and thus could not have contributed to a hostile work environment. See Hirase-Doi v. U.S. W. Commc'ns, Inc., 61 F.3d 777, 782 (10th Cir. 1995), superseded on other grounds by Faragher v. City of Boca Raton, 524 U.S. 775 (1998) (a plaintiff "may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment").

Similarly unfounded is Aman's argument that his reclassification to the service desk contributed to a hostile work environment. The same is true as to his claims regarding management's doubts about the severity of his pain and employees' mockery of his injury. These allegations did not involve the same type of employment actions as the pre-limitations period racial comments or Gordy assault. Nor—with one exception discussed infra—did they involve the same employees as the pre-limitations period conduct. And his reclassification occurred approximately one year after the more serious incident involving Gordy. Thus, his reclassification does not satisfy any of the relevant factors. See Duncan, 397 F.3d at 1309.

8

The only connection between pre- and post-limitations period conduct we can discern is that Bateson allegedly refused to shake Aman's hand on his first day of work at store #5 and called Aman a "lazy African" on a single occasion outside the limitations period, and was one of the employees who doubted the severity of Aman's pain within the limitations period. Even assuming that Bateson's single racial comment and handshake slight should be included in the analysis, we conclude that the isolated Bateson incidents are not sufficient for a jury to find Aman was subject to a hostile work environment. Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994) ("Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments" to support a hostile work environment). Regardless, this single incident of harassment occurring within the limitations period is insufficient to tie the claim back to prior harassment by the same employee. See Holmes v. Utah, Dep't of Workforce Servs., 483 F.3d 1057, 1063-64 (10th Cir. 2007).

Focusing on the potentially timely actions, the vast majority of Aman's proffered evidence does not suggest racial discrimination generally, nor that his reassignment and termination were motivated by race. Bolden, 43 F.3d at 551 ("General harassment if not racial or sexual is not actionable."). He likewise fails to demonstrate that his co-workers' doubts about the severity of his injury were racially-driven, or that they were severe or pervasive. Because Aman has not demonstrated a workplace sufficiently "permeated with [racially] discriminatory intimidation,

9

ridicule, and insult," Morris, 666 F.3d at 664 (quotation omitted), we affirm the district court's dismissal of Aman's hostile work environment claim.

**B**

We consider Aman's claim of termination on the basis of race under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-06 (1973). Under this framework, Aman carries the initial burden of establishing a prima facie case of discrimination. EEOC v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007). The burden then shifts to King Soopers to provide a legitimate non-discriminatory reason for its decision to terminate him. Id. If it does so, the burden shifts back to Aman to show that King Soopers' stated reason is pretextual. Id. The parties agree that Aman satisfied his prima facie obligation, and King Soopers responded that it legitimately fired him for being absent without leave. Thus, the parties' sole dispute on this claim is whether Aman advanced sufficient evidence of pretext.[3]

A plaintiff may establish pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

---

[3] Aman briefly argues that he was not given an opportunity to respond to the district court's reliance on employee testimony suggesting that King Soopers does not permit racial discrimination. See Fed. R. Civ. P. 50(a)(1) (providing that a court may enter judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue"). In its oral ruling, the district court references King Soopers' stance on discrimination. But we do not read the court's decision as relying on this testimony. Instead, the court held that Aman had not provided sufficient evidence to demonstrate that race was a factor in his termination—an issue that was fully litigated.

10

proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Jones v. Okla. City Pub. Sch., 617 F.3d 1273, 1280 (10th Cir. 2010) (quotation omitted).

Aman suggests pretext because he adhered to King Soopers' sick policy by calling in sick for five consecutive scheduled shifts from May 13 to 17, 2008; and again for the entire week of May 20 to 23 after a night crew foreman told him he did not need to call every day. Because the absences were excused, he contends that they could not support termination. But Aman conflates King Soopers' call-in procedure with its process for excusing absences. The evidence shows that although any member of management can accept a sick call, only the store manager, or in his absence, the assistant store manager, may excuse an absence. Aman did not contact his direct supervisor, the store manager, or the assistant store manager between May 11 and June 2, 2008. Thus, evidence that Aman spoke to appropriate individuals when calling in does not undermine King Soopers' position that Aman was terminated for unexcused absences.

Similarly, Aman argues that he was entitled to take leave for the time he was absent and notes that Ruby was aware he was planning to see a doctor. But King Soopers' policy requires an employee to submit a written request for leave in excess of five days. And, absent exceptional circumstances, the request must be approved before the leave begins. Aman admitted that he was aware of these policies and knew he had not been approved for leave.

11

Aman also identifies inconsistencies in King Soopers' stated justifications for his termination. He notes that on two occasions King Soopers mis-identified the dates Aman did not call in sick, and suggests management wavered between stating he was fired for "excessive absenteeism" and stating he "quit without notice." But neither of these observations undermines King Soopers' consistent assertion that Aman was terminated because he did not come to work between May 11 and the date he was fired. In particular, the terms "excessive absenteeism" and "quit without notice" are related—an employee explained that numerous consecutive unexcused absences would be described as having quit without notice. The descriptive variations are thus "simply too minor to give rise to an inference of pretext." Hardy v. S.F. Phosphates Ltd., 185 F.3d 1076, 1081 (10th Cir. 1999).

Finally, Aman argues that Ruby should have retroactively excused his absences when Aman submitted a note from his doctor on June 2, 2008. He contends that rejection of this note demonstrates pretext because Ruby testified both that he did not expect Aman to bring in a note before June 2, and that Aman should have brought the note in sooner. He also contends that Ruby did not provide any reason for declining to excuse Aman's absences. However, Aman ignores the portions of Ruby's testimony in which Ruby stated that Aman should have contacted him or the assistant store manager sooner regardless of when Aman brought the doctor's note in. We do not discern any inconsistency in Ruby's testimony on this point. And, as noted supra, Ruby provided a legitimate reason for the termination: Aman did not comply with the policy requiring prior approval for leave of more than five days.

12

Considering all of this evidence together, we agree with the district court that Aman did not provide a legally sufficient evidentiary basis to conclude that King Soopers' stated reason for firing him was pretextual.[4]

## C

Aman claims both ADA and race-based retaliation. If an employee cannot provide direct evidence of retaliatory motive, he may rely on the McDonnell Douglas burden-shifting framework described supra. See Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 998 (10th Cir. 2011). Under the first step in this framework, the employee must make out a prima facie case of retaliation by showing: "(1) she engaged in protected [conduct], (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 638 (10th Cir. 2012) (quotation omitted); see also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999).[5]

---

[4] Aman further claims that Ruby and Stephanie Bouknight offered different accounts of the termination decision. In support of this argument he cites to evidence from the summary judgment record. We cannot consider this evidence in our analysis. See McEuin v. Crown Equip. Corp., 328 F.3d 1028, 1037 (9th Cir. 2003) ("Evidence not admitted at trial cannot be used in a review of the district court's [ruling on a motion for] judgment as a matter of law.").

[5] For a Title VII or § 1981 retaliation claim, a plaintiff must prove that the desire to retaliate was the but-for cause of the challenged employment action. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013); Davis v. Unified Sch. Dist. 500, 750 F.3d 1168, 1170 (10th Cir. 2014) (stating that the "standards are the same" for Title VII and § 1981 claims). It not clear whether an ADA retaliation claim requires "but for" or "motivating factor" causation. See Doe v. Bd. of Cty. Comm'rs, 613 F. App'x 743, 747 n.3 (10th Cir. 2015) (unpublished) (noting that

13

Aman asserts that he participated in protected conduct by complaining of discrimination. Specifically, when he was informed in early May 2008 that he was ineligible for leave because King Soopers had a position available for him, Aman complained both of previous racial harassment and argued that he was entitled to leave due to his injury, which resulted from his co-worker's assault. But Aman did not provide evidence from which a jury could find causation. Aman asserts that a jury could infer causation based on the temporal proximity between his complaints and his termination. We have held that temporal proximity of approximately one month can be sufficient to establish causation. See Trujillo v. PacifiCorp, 524 F.3d 1149, 1157 n.5 (10th Cir. 2008). And the district court accepted the temporal proximity as sufficiently probative to demonstrate a prima facie case on these two claims at the summary judgment stage.

But we have repeatedly "recognized that evidence of temporal proximity has minimal probative value in a retaliation case where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action." Twigg, 659 F.3d at 1001-02; Maestas v. Segura, 416 F.3d 1182, 1189 (10th Cir. 2005) ("[E]vidence of intervening events tend[s] to undermine any inference of retaliatory motive and weaken the causal link." (citation omitted)). As discussed supra, after asserting his complaints Aman missed

_____
several courts have applied the "but for" causation standard in assessing ADA claims); Wesley-Dickson v. Warwick Valley Cent. Sch. Dist., 586 F. App'x 739, 745 n.3 (2d Cir. 2014) (unpublished) (noting that the "but-for standard might apply to . . . ADA retaliation claim[s]"). Because we conclude that Aman cannot prevail even under the lower motivating factor standard, we will assume it applies.

14

numerous days of work without contacting the individuals authorized to excuse his absences. And he offers no other basis on which to infer that his termination was retaliation for his complaints. We thus conclude he fails to make out a prima facie case that he was terminated in retaliation for his complaints regarding his disability and race.[6] Under these circumstances, his retaliation claims fail.[7]

## IV

Aman also appeals the district court's decision to exclude evidence related to treatment of allegedly similarly situated employees. "We review evidentiary rulings for an abuse of discretion, and pay deference to the trial court's familiarity with the case and experience in evidentiary matters." Elm Ridge Expl. Co. v. Engle, 721 F.3d 1199, 1213 (10th Cir. 2013) (quotation omitted). "We reverse only if the district court's conclusion is arbitrary, capricious, whimsical or manifestly unreasonable or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Id. (quotation omitted). To establish the relevance of the excluded evidence, Aman was required to show that he was similarly situated to the comparable employees. McGowan v. City of Eufala, 472 F.3d 736, 745 (10th Cir. 2006). Comparator employees must have

---

[6] We conclude that Aman has not made out a prima facie case, and so do not reach his argument regarding the pretext step in the McDonnell Douglas framework. We note, however, that we have already concluded supra that Aman did not submit evidence sufficient to conclude that King Soopers' legitimate reason for his termination was pretext.

[7] Because we affirm the district court's dismissal of Aman's claims, we need not consider his arguments regarding the availability of punitive damages. See Stewart v. Adolph Coors Co., 217 F.3d 1285, 1289 n.2 (10th Cir. 2000).

15

engaged in "conduct of comparable seriousness in order for their disparate treatment to be relevant." Id. (quotation omitted).

Aman proffered evidence regarding three other employees who were disciplined but not terminated for excessive absenteeism. It was within the district court's discretion to conclude that none of these employees' misconduct was comparable to Aman's. Although the comparator employees were disciplined for calling in sick too frequently over the course of their employment, none of the employees were absent for a consecutive span of days approaching the bloc Aman missed.

**V**

Finally, Aman challenges the district court order requiring that he post an appeal bond. King Soopers did not move to enforce the bond, and thus argues the issue is moot. An issue is moot unless "granting a present determination of the issues offered will have some effect in the real world." See Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1110 (10th Cir. 2010) (quotation and emphasis omitted). We agree that the issue is now moot because the appeal has been decided without Aman posting the bond, and a decision from this court would have no practical effect. Because mootness is a jurisdictional issue, see id. at 1109, we dismiss Aman's appeal of the bond order, which was assigned docket number 15-1054.

16

**VI**

We **AFFIRM** the judgment of the district court.  Aman's appeal as to the bond order is **DISMISSED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge